IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JENNIFER KILGORE, and SHIRLEY HOWARD INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | | PLAINTIFFS |
| VERSUS | CIVIL ACTION NO. 1:25CV55-TBM-RPM | |
| THE CITY OF MOSS POINT, MAYOR BILLY KNIGHT AND THE CITY ALDERMEN, EACH IN THEIR OFFICIAL AND ELECTED CAPACITY AND THE MOSS POINT CHIEF OF POLICE, IN HIS OFFICIAL CAPACITY, INTELLISAFE, LLC, JOHN DOES 1-10, AND ACME COMPANIES 1-10 | | DEFENDANTS |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' F.R.C.P. 12(b)(6) MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY**

COMES NOW, Defendant, Intellisafe, LLC (hereinafter referred to as "Defendant" or "Intellisafe"), improperly named as "Intellisafe, Inc.", by and through its attorneys, and files this Memorandum in Support of its F.R.C.P. 12(b)(6) Motion to Dismiss or, in the Alternative, Motion to Stay and states:

**INTRODUCTION AND STATEMENT OF FACTS**

On February 27, 2025, Plaintiffs filed their First Amended Complaint [Doc. 3] of their class action suit, alleging the City Defendants violated their Constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. The Plaintiffs also allege state law claims and attempt to allege a claim for punitive damages and claims of fraud and civil conspiracy. Plaintiffs' "Summary of the Case" alleges:

> Plaintiffs allege that Defendant, Intellisafe, LLC, has conspired with the City of Moss Point Mayor and the Board of Alderman, with the express approval of the Chief of Police, to pass Moss Point Ordinance 36-1, allowing the police department, since June of 2024 till present, to enforce alleged traffic violations with automated recording devices. The

object appears to be establishment of a stream of revenue for the benefit of the City of Moss Point, and its officers. This scheme is in violation of Mississippi Code 1972 Section 1-25-19 (2023).

(Amended Compl. [Doc. 3] at p. 4). The proposed class is "all persons who have received, or will receive, a camera citation from Moss Point Police Department from time of inception of the program until present and continuing." (*Id*. at p. 5). The Plaintiffs allege that "the Defendants have routinely sought to coerce, extort and defraud the Plaintiffs in the form of $230.00 fines." (*Id*. at p. 6). The Amended Complaint further alleges "all [class members] have Article III standing as all such persons and entities were accessed a fine based upon an affidavit/or citation of a police officer of the City of Moss Point and Intellisafe." (*Id.*).

The named Plaintiffs in this action are Jennifer Kilgore ("Kilgore") and Shirley Howard ("Howard"). As to Kilgore, a Ford Explorer registered in her name was recorded speeding (48MPH in a 35MPH zone) by a Moss Point Police Department officer on or about December 18, 2024 near 4900 Main Street in downtown Moss Point. (Compl. [Doc. 1]). She was issued a camera citation and received a Notice of Speed Violation in the mail. *Id.* The Amended Complaint states that she did not pay the fine but "retained a lawyer to fight the ticket". (Amended Compl. [Doc. 3] at p. 3). It is unclear whether she chose to contest the ticket in court, or if filing this lawsuit is what she is referencing in the Complaint. As to Howard, she was issued a camera citation and received a Notice of Speed Violation; she elected to pay via the provided diversion program rather than utilize the procedures provided to challenge the citation. (*Id.* at pp. 3-4).

As shown in the Exhibit "A" to the Complaint, the Notice of Speed Violation mailed to an alleged offender provides the following three options:

> 1. Complete a diversion program by paying a reduced fee of $230 and watching a short video at www.CourtPayOnline.com. By completing the diversion program and paying the reduced fee, this ticket will not go on your driving record.

2

2. Contest this citation by visiting www.CourtPayOnline.com. Or calling 1-855-606-8587 **to schedule your date to appear in court.**

*(bolded and underlined portion left out of Plaintiffs' recitation of the Notice's content at paragraph 34. but evident in Exhibit "A" to the Complaint.)

3. Pay the citation in full. By doing so, this ticket will go on your driving record. You may instead choose the diversion program mentioned above.

(Amended Compl. [Doc. 3] at p. 14). Plaintiffs filed the subject lawsuit seeking to challenge the citation, claiming that it is in violation of 5th and 14th due process rights, the 4th Amendment, the 6th Amendment, 14th Amendment equal protection rights, violation of Miss. Code Ann. § 17-25-19, fraud, civil conspiracy, abuse of process, unjust enrichment, municipal liability under 42 U.S.C. § 1983, violations of privacy, and punitive damages. Plaintiffs further seek declaratory and injunctive relief.

This Court should dismiss the Plaintiffs' class action suit against Intellisafe. The Plaintiffs have failed to show that they satisfy all elements of Article III standing, and their claims otherwise fail to meet Rule 12(b)(6) and Rule 9 pleading standards. Because this Court does not have jurisdiction over the claims alleged, the claims are not cognizable under law, and/or the Plaintiffs otherwise have failed to adequately plead their claims, the Court should dismiss the Plaintiffs' claims against Intellisafe with costs assessed to the Plaintiffs.

## LAW and ARGUMENT

**I.  The speeding enforcement system at issue is permitted under Mississippi law.**

In Mississippi, all citations, including the citations sent to the Plaintiffs herein, must comply with Miss. Code Ann. §63-9-21. Subsection (8) of said statute states that an officer may issue a citation by computer or electronic means. A Mississippi police officer only needs probable cause to issue a citation for speeding. Probable cause is just that – probable – or a rebuttable inference of guilt. Plaintiffs' Amended Complaint states, "[w]ithout a vehicle stop, an Officer cannot beyond a reasonable doubt tell who was operating a vehicle." (Amended Compl. [Doc. 3] at para. 38). This incorrectly conflates the standard for a criminal conviction – beyond a reasonable doubt – with probable cause.

Notably, probable cause exists in other Mississippi statutes when the driver of a vehicle is not positively identified. This is not a novel concept or unique to the traffic enforcement system at issue here. "Nathan's Law", codified at MS Code Ann. § 63-3-615 and concerning impermissible passing of a school bus provides that:

> (4) If any person witnesses the driver of any vehicle violating the provisions of this section and the identity of the driver of the vehicle is not otherwise apparent, it shall be a rebuttable inference that the person in whose name the vehicle is registered committed the violation. If charges are filed against multiple owners of a motor vehicle, only one (1) of the owners may be convicted and court costs may be assessed against only one (1) of the owners. If the vehicle that is involved in the violation is registered in the name of a rental or leasing company and the vehicle is rented or leased to another person at the time of the violation, the rental or leasing company may rebut the inference of guilt by providing the law enforcement officer or prosecuting authority with a copy of the rental or lease agreement in effect at the time of the violation.

Probable cause also exists where a vehicle is caught on camera in relation to the commission of crimes such as burglary. Parking tickets are another example. Furthermore, the issuance of a citation is not a finding of guilt.

Plaintiffs allege that Defendants' system violates the maxim of "innocent until proven guilty". Here, Howard simply elected to avail herself of the diversion program rather than contest the citation. Alternatively, Kilgore was given the option to contest the citation in court. Therefore, Defendants' traffic enforcement system is clearly permissible under state law, and Plaintiffs' claims should be dismissed for mootness and failure to state a claim under Rule 12(b)(6).

### II. Miss. Code Ann. §17-25-19 does not apply because Intellisafe's traffic control system is not automated.

Plaintiffs allege that that Intellisafe's speed detection equipment and its usage by the City's police officers is "automated", but they do not provide any facts in support of this assertion. In reality, Intellisafe's traffic control equipment is manually operated by a police officer using a **handheld** LiDAR (Light Detection and Ranging) gun to determine the speed of a vehicle and an integrated camera to record the license plate and video of the vehicle as it passes through the field of view. The entire system is manually operated by an officer trained and certified in its usage.

Before issuing a citation, a police officer will either be in his car or standing outside his car viewing traffic passing his location. If the officer suspects that the oncoming vehicle is speeding, he points the LiDAR gun at the vehicle and manually engages the radar. After engaging the radar, if the officer notes that the vehicle is speeding, he then engages the integrated video recorder, which records the vehicle, the driver (weather conditions permitting), and the rear of the vehicle. Later, the officer reviews the recorded violations at the police station and uses discretion in determining whether a citation should be issued. If the officer determines that a citation is warranted, the citation is then filled out but not sworn to or filed with the court.

Next, the unsworn and unfiled citation is given to Intellisafe, who then sends it along with instruction to the vehicle owner by U.S. Mail advising that the vehicle was observed to be in violation of the City of Moss Point's traffic ordinances and provides the vehicle owner with the three options stated *supra.*

As its title suggests, Miss. Code Ann. §17-25-19 "Use of Automated Recording Equipment or Systems to Enforce Compliance with Traffic Signals, Traffic Speeds or Other Traffic Laws" clearly applies to automated systems. The statute reads:

> (1)(a) Neither the board of supervisors of any county nor the governing authority of any municipality shall adopt, enact or enforce any ordinance authorizing the use of automated recording equipment or system to enforce compliance with traffic signals, traffic speeds or other traffic laws, rules or regulations on any public street, road or highway within this state or to impose or collect any civil or criminal fine, fee or penalty for any such violation.
> (b) Any county or municipality using automated recording equipment or system shall remove the equipment or system before October 1, 2009.
>
> (2) For the purposes of this section, <u>the term "automated recording equipment or system" means a camera or optical device installed to work in conjunction with a traffic control signal or radar speed detection equipment or both</u> and designed to record images that depict the license plate attached to the rear of a motor vehicle that is not operated in compliance with instructions of the traffic control signal or the posted speed limit.

Miss. Code Ann. § 17-25-19 (emphasis added).

The definition of an automated recording system is narrow. In subsection (2), it states that the camera or optical device must be "installed". *Id.* Here, the equipment is manually operated by a police officer. Thus, for the statute to have any application to the equipment at issue here, one would have to accept the outlandish notion that it is "installed" in the officer's hand. Clearly, the statute contemplates systems mounted to fixtures like traffic signals and does not apply to this equipment.

Additionally, the Mississippi Attorney General has pointed out that Miss. Code Ann. §17-25-9 has a very narrow definition of what activity is prohibited under the statute. *Sorell*, 2009 WL

1357196 (Miss.A.G.). In *Sorell*, soon after this statute came into law, the Attorney General was asked the following question:

> "Can a municipality continue to install and operate cameras in police vehicles for enforcement of traffic laws?" In response, the Attorney General stated, "The answer to question 1 is yes, the municipality can continue to install and operate cameras in police vehicles for enforcement of traffic laws." The Attorney General further stated, "The use of a camera in a police vehicle is not installed to work in conjunction with a traffic signal or radar designed to depict license plates. The narrow definition of the prohibited activity does not cover the use of vehicle mounted cameras."

*Id.*

While the Attorney General's opinion does not directly address the equipment used here, it distinguishes standalone automated systems from those installed in police vehicles. Here, Intellisafe's equipment is even further separated from the fixed, automated cameras contemplated by §17-25-9 in that a police officer <u>manually engages</u> the system. In fact, two Mississippi legislators recently attempted to amend §17-25-9 specifically because **<u>it does not</u>** cover the equipment at issue here. *2025 Mississippi Senate Bill No. 2201, Mississippi One Hundred Fortieth Legislative Session.* Senate Bill No. 2201 sought to add the sentence, ""<u>Automated recording equipment or system" includes any automated recording equipment or system operated manually by a law enforcement officer</u>." *Id.* The Bill died in committee on March 4, 2025. *Id.* The Bill's failure is instructive both as to what §17-25-9 actually covers and to the simply illogical argument that a statute addressing automated cameras would encompass manually operated equipment. Ultimately, it is not debatable that Intellisafe's speed detection system used by the City of Moss Point is manually operated and permitted by law.

### III. <u>Plaintiffs lack standing under Article III, and Plaintiff Howard's claims are moot.</u>

This Court should not consider the merits of Plaintiffs' claims under Rule 12(b)(6) until it is satisfied they have standing to assert those claims. See *Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83, 94–95 (1998). Federal courts do not have jurisdiction over cases in which a plaintiff lacks standing. *Lutostanski v. Brown*, 88 F.4th 582, 587 (5th Cir. 2023)("a lack of standing is a lack of subject matter jurisdiction.").

There are three elements that a plaintiff must show in order to establish standing: "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "In other words, '[i]f the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *Id.* Here, Plaintiff Howard cannot satisfy the elements to show that she has Article III standing because she chose to pay the citation rather than challenge the citation with the resources provided. Furthermore, as there is no longer any case or controversy, Plaintiff Howard's claims are moot.

In *Stubbs v. City of Center Point, Ala.*, an Alabama District Court held that the plaintiff lacked standing to make a due process challenge to a traffic citation from an automated camera. 88 F. Supp. 2d 1270, 1277 (N.D. Ala. 2013). In *Stubbs*, the city contracted with a private company to implement an ordinance authorizing automated photographic enforcement of traffic violations, including speeding. *Id.* at 1273. Plaintiff Stubbs alleged that she received a notice of a traffic citation and "instructions on how to 'take care of the Notice.'" *Id.* "The instructions stated that she must select one of two options: either pay the civil penalty by personal check, money order, or credit card, or exercise her right to a hearing by submitting a hearing request and appearing at the scheduled time." *Id.* Rather than submitting a hearing request, "Ms. Stubbs paid her tickets." *Id.*

The Court found that Ms. Stubbs failed to establish standing. The Court held that "while payment of the fine could be considered an injury, Ms. Stubb's injury is not causally connected to

8

the conduct of which she complains because she paid her fine without taking advantage of the process provided by the City to challenge it." *Id.* at 1277-78. Moreover, "[e]ven if that process were insufficient to satisfy constitutional standards, it did not cause Ms. Stubbs to voluntarily pay her fine; no traceable connection exists." *Id.* at 1278. "Furthermore, were the court to find the process insufficient, Ms. Stubbs would receive no redress for having paid the fine." *Id.* Accordingly, the Court held that the plaintiff lacked standing to make a due process challenge to the traffic citation.

The Sixth Circuit has held that that the plaintiff lacks standing to argue that her constitutional rights were violated "because she elected to pay the fine rather than request a hearing." *Herrada v. City of Detroit*, 275 F.3d 553, 558 (6th Cir. 2001). The Fourth Circuit affirmed a District Court's opinion, holding "courts have consistently held that, where an individual elects to pay a civil fine and thus avoid the criminal procedures provided to contest the alleged violation, that individual lacks standing to challenge the procedures they declined to use." *Clark v. Humane Soc. of Carroll Cnty., Inc.*, 2011 WL 2791041 (D. Md. July 13, 2011), *aff'd*, 468 F. App'x 342 (4th Cir. 2012).

Here, like the motorist in *Stubbs*, Plaintiff Howard paid the citation without utilizing any of the procedures cited in the Complaint to challenge the citation. In *Stubbs*, the Court held that while payment of the fine *could* be considered an injury, said injury was not causally connected to the conduct of which she complained because she paid the fine without taking advantage of the process provided to challenge it and dismissed her claims for lack of standing. Similar to the Plaintiff in *Herrada*, who was found to lack standing, here, Plaintiff Howard declined to request a hearing and instead paid the fine. Accordingly, Plaintiff Howard lacks standing under Article III for failing to challenge the procedures she failed to use, and her claims must be dismissed.

9

Plaintiff Kilgore's claims amount to a complaint of the process itself, which is not a viable constitutional claim and does not equate to standing. It is unclear whether Kilgore contested the citation via the provided court process. Regardless, an abstract allegation of inadequate process is not a legally cognizable Article III injury. See *Olim v. Wakinekona*, 461 U.S. 238, 250, (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); see also *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000) ("There is no abstract federal constitutional right to process for process's sake.") and *United States v. Hays*, 515 U.S. 737, 743 (1995)("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal government conduct as sufficient for standing to invoke the federal judicial power."). Therefore, Kilgore's claims amount to a complaint of the process itself and do not confer standing under Article III.

As for class actions, "[e]very class member must have Article III standing in order to recover individual damages." *Id.* at 417. "In a class action, the named plaintiffs representing a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); see also *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 924 n.12 (5th Cir. 2023).

### IV.     **Plaintiffs fail to state a claim for relief for violation of due process.**

Plaintiffs do not sufficiently allege a deprivation of a protected interest in life, liberty, or property. "While state law determines whether a claimant has a property interest, federal law determines the minimum procedures constitutionally required." *Helton v. Clements*, 832 F.2d 332, 337 (5th Cir. 1987) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)). "Procedural due process is a flexible concept whose contours are shaped by the nature of the

individual's and the state interests in a particular deprivation." *Caine v. Hardy*, 943 F.2d 1406, 1411–12 (5th Cir. 1991).

Generally, the "government may effect a deprivation only after it has accorded due process, but the necessary amount and kind of pre-deprivation process depends upon an analysis of three factors": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 1412 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); see also *Campos v. Donna Indep. Sch. Dist.*, No. 7:15-CV-70, 2016 WL 8117635, at *3 (S.D. Tex. Apr. 4, 2016) (reciting the *Mathews* test).

Numerous courts, including this one, have found similar traffic enforcement schemes to provide constitutionally adequate due process based in part on the sufficiency of notice provided. *Divine v. Securix, LLC*, No. 1:23-CV-196-HSO-BWR, 2024 WL 4245421, at *10 (S.D. Miss. Sept. 19, 2024). In *Divine*, a private entity, Securix, LLC contracted with multiple Mississippi cities to provide automatic license plate readers to identify unlawfully uninsured vehicles and then send citations to the vehicles' owners. *Id.* at *1. Plaintiffs filed a class action lawsuit against Securix, LLC alleging federal due process claims which were subsequently dismissed by the Court under Rule 12(b)(6). *Id.* at *10.

The Court found that each Plaintiff not only received notices before any punishment befell them, but that each exercised one of the options contained in the notice, such as to enter the diversion program, pay the fine, or request a hearing. *Id.* Moreover, the Court recognized that one plaintiff received her mail notice on the same day as her court date, giving her little or no time to

11

respond. *Id.* Still, the Court held that "'"the failure of notice in a specific case does not establish the inadequacy of the attempted notice[,]" and because "the constitutionality of a particular procedure for notice is assessed *ex ante*, rather than *post hoc*[,]" Ms. Divine's individual experience is insufficient, standing alone, to establish a due process violation."'" *Id.* (quoting *Jones v. Flowers*, 547 U.S. 220, 231 (2006)). The *Divine* plaintiffs also argued that the court dates listed in the mail notices were never "filed with a court so there is no actual court date." *Id.* The Court held that this too was insufficient to establish a due process violation and effectively gave the plaintiffs more time to prepare for their eventual hearings than they originally believed. *Id.*

The *Divine* plaintiffs also argued that Securix, LLC's diversion program violated Mississippi law and could constitute defenses to state-court proceedings against them. *Id.* The Court **<u>disagreed</u>** finding that "[i]mportantly, "[a]lthough a state or local entity may have failed to comply with statutory notice requirements, 'this state law violation does not also amount to a violation of federal due process.'" *Id.* (emphasis added) (quoting *Lee v. City of Pascagoula, Jackson Cnty., Mississippi*, No. 1:23CV63-LG-RPM, 2023 WL 8654932, at *5 (S.D. Miss. 2023). "[U]nless the conduct trespasses on federal constitutional safeguards, there is no [federal] constitutional deprivation." *Id.* The *Divine* court ultimately dismissed the due process claims reasoning that "[e]ach Plaintiff was afforded an opportunity to choose among three options to respond to the alleged violations, one of which included appearing in court to contest them…[a]nd each Plaintiff made their own decision about how to respond." *Id.* (noting that one plaintiff paid the fine while one did not pay any fine at all).

A similar situation occurred in *Bevis v. City of New Orleans*, where the plaintiffs challenged the constitutionality of a system used by the City of New Orleans to use automated cameras to detect speeding violations and vehicles running red lights. 686 F.3d 277, 278 (5th Cir.

12

2012). There, the City contracted with American Traffic Solutions ("ATS") to install and maintain the cameras and later view the footage and forward potential violations to the police department. *Id.* The police then issue a citation via a mailed notice. *Id.* Owner and operator are jointly and severally liable for the fine, except that it is an affirmative defense if the operator was driving the vehicle without the owner's consent. *Id.*

The Fifth Circuit assessed the constitutionality of the system in *Bevis* by "balancing the private and governmental interests concerned" under *Mathews v. Eldridge*. Id. at 281 (quoting *Mathews*, 424 U.S. 319, 334–35 (1976). The Court found 1) the maximum fines of $380-$455 to be relatively minor, 2) the administrative hearing process presided over by a municipal executive – not a judge – to be inoffensive to due process, 3) a fundamental interest is not at stake, and 4) the governmental interest in preventing traffic accidents to outweigh the private interests and risk of error. *Id.* Ultimately, the Fifth Circuit found that the system fell comfortably within the "great leeway" given to governments in "protec[ting] public health and safety". *Id.* (quoting *Mackey v. Montrym*, 443 U.S. 1, 17 (1979).

Specifically, in the case at hand, the Plaintiffs' substantive due process claims fail because a minor fine for a traffic violation is not a fundamental right. *Mestayer v. City of New Orleans*, No. CV 19-14432, 2020 WL 3429826, at *8 (E.D. La. June 23, 2020). In *Mestayer*, the plaintiffs attempted to challenge the same New Orleans traffic enforcement system seen in *Bevis*. *Id.* The Court dismissed the plaintiffs' procedural and substantive due process claims holding that "[t]he Supreme Court has never held that a property interest so modest is a fundamental right." *Id.* (quoting *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (citing *Washington v. Glucksberg*, 521 U.S. 702, 719-22 (1997)). Instead, modest fines and penalties have been found not to constitute a protected property right. *Id.* (citing *Idris* at 564). Here, the fine of $230 for

13

speeding in a school zone does not constitute a fundamental right in light of the controlling precedent.

Again, in *Stubbs*, the 11th Circuit Court held that even if the motorist had standing to pursue her due process action, "she has failed to state a claim for a constitutional violation under § 1983." *Stubbs*, 988 F. Supp. 2d 1270, 1278. The Court explained, "[t]he Supreme Court has held that a 'constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Id.* (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)). The Court found "Stubbs may have adequately alleged a deprivation—the payment of her fine—but does not allege that the City Defendants failed to provide due process because she admits that she never sought to challenge the traffic citation." *Id.* Accordingly, the Court granted the defendants' motion to dismiss as to Stubbs. *Id.*

Here, neither plaintiff has suffered an infringement of a fundamental right, and therefore there are no substantive due process violations. As to procedural due process, Howard paid the fine and never afforded herself of the process provided. Likewise, Kilgore has not availed herself of the procedural due process provided and is ostensibly attempting to circumvent the process entirely by filing this lawsuit. Ultimately, the facts of this case are in line with controlling precedent regarding due process for similar circumstances and should be dismissed accordingly.

## V. **Plaintiffs fail to adequately plead violations of their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.**

Plaintiffs also allege a series of untenable constitutional violations. Plaintiffs allege that their Fifth Amendment due process rights have been violated. These claims must be dismissed because the Fifth Amendment applies only to actions of the federal government. *See Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020) (holding that the plaintiff failed to state a claim under the Fifth Amendment due process clause because the defendant "was an officer of the state of

Louisiana rather than of the federal government"); *id.* at 265 n.2 ("The district court correctly observed that only the Fourteenth Amendment's Due Process Clause, and not the Fifth Amendment's, applies to state law enforcement officers[.]"); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) (noting that the Fifth Amendment does not apply "to the actions of a municipal government"). Here, Plaintiffs do not allege any due process violations on behalf of the federal government, and these claims must be dismissed accordingly.

Next, Plaintiffs allege that their right to confront witnesses under the Sixth Amendment was violated. Plaintiff Howard bases this claim on the false notion that she was deemed guilty of the Citation, because she elected to pay the fine and enter the diversion program. This was Howard's choice – which she made despite a clear opportunity to contest the citation at a court hearing. Howard waived the right to confront witnesses against her, including the ticketing officer, when she elected to participate in the diversion program rather than go to court. She cannot now assert rights which she waived. Furthermore, Howard's claims under the Sixth Amendment are now moot, as there are no charges pending against her. Kilgore is also given the opportunity to confront the ticketing officer by contesting the citation in court, whether she has or has not is unclear and entirely her choice. Both Plaintiffs were given the clear opportunity to confront witnesses against them. For these reasons, Plaintiff's claims under the Sixth Amendment must be dismissed.

Plaintiffs also make a hollow argument for a violation of the equal protection clause of the Fourteenth Amendment yet fail to allege that any protected class has been unfairly targeted. As the Fifth Circuit noted, "[t]he equal protection clause requires that all persons similarly situated be treated alike." *Piotrowski v. City of Houston*, 237 F.3d 567, at note 15 (5th Cir. 2001) (citing *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1989). Further, "[i]n order

to establish a violation of equal protection, a plaintiff must show "'the existence of purposeful discrimination" motivating the state action which caused the complained of injury.'" *Id*. (citing *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997) (quoting *McCleskey v. Kemp,* 481 U.S. 279, 292–93 (1987))). Such facts do not exist in this case as no protected class is targeted by Defendants' traffic enforcement system.

Moreover, Courts have found no equal protection violations under similar facts, as camera assisted ticketing systems utilized for enforcement of traffic laws have a rational relationship to government interest. See e.g., *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 996 (8th Cir. 2016), stating:

> The ordinance passes rational basis. The City could rationally conclude that the ATE system would reduce the number of people violating traffic laws. *See Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (A "system that simultaneously raises money and improves compliance with traffic laws has much to recommend and it cannot be called unconstitutionally whimsical"); *Hughes*, 112 F.Supp.3d at 842–43 (rejecting an equal-protection challenge to distinctions based on licence-plate location and types of vehicles in the database). There is no Equal Protection Clause violation here.

See also *Hanna v. LeBlanc*, No. CV 15-2851, 2017 WL 2198345, at *7 (W.D. La. Mar. 8, 2017), *report and recommendation adopted,* No. CV 15-2851, 2017 WL 2198188 (W.D. La. May 18, 2017), *aff'd,* 716 Fed. Appx. 265 (5th Cir. 2017)(unpublished)(no violation of equal protection); *Mills v. City of Springfield, Mo.*, No. 2:10-CV-04036-NKL, 2010 WL 3526208, at *7 (W.D. Mo. Sept. 3, 2010)("It is implausible that § 106–161 could have denied Plaintiffs the equal protection of the law, and Plaintiffs have failed to state a claim for which relief can be granted under the Equal Protection Clause of the Fourteenth Amendment.")(citing *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 723 (M.D.N.C. 2003), *order vacated sub nom. Shavitz v. Guilford Cnty. Bd. of Educ.*, 100 Fed. Appx. 146 (4th Cir. 2004)(unpublished)("Plaintiff falls far short of surmounting

the formidable presumption of validity bestowed upon the statute and ordinance by the rational basis review standard."). In this case, the Plaintiffs do not allege purposeful discrimination or a protected class. Again, the equal protection claims must be dismissed.

Plaintiffs' Fourth Amendment claims are equally hollow and must be dismissed. The Plaintiffs allege their Fourth Amendment rights are being violated "by the Defendants actions in enforcing an unlawful ticketing scheme." (Amended Compl. [Doc. 3] at p. 17). The Fourth Amendment applies to warrants. No warrants have been issued in relation to the traffic enforcement system at issue, and Plaintiffs do not and cannot allege any facts to support this claim. These claims must be dismissed.

**VI.     Plaintiffs fail to adequately plead an abuse of process claim.**

The record is devoid of any evidence to support the Plaintiffs' claims of abuse of process. Defendants' traffic enforcement system is not used for an improper purpose. Instead, its aim is to mitigate dangerous speeding activity in a way that is safer for both motorists and law enforcement officers. The fact that a municipality has contracted with a private entity to assist in traffic enforcement is not improper and is ubiquitous across the nation. Lastly, no damage has resulted as Plaintiffs have not availed themselves of the court system. Therefore, Plaintiffs' abuse of process claims fail and must be dismissed.

**VII.    Plaintiffs fail to adequately plead a claim for fraud against Intellisafe.**

Pursuant to Rule 9(b), "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" and, at a minimum, should include "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Services, Inc. v.*

*TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1297, at 590 (1990)).

Under Mississippi law, the elements of a fraud claim are as follows:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely; (9 thereon) his consequent proximate injury.

*Peters v. Metro. Life Ins. Co.*, 164 F. Supp. 2d 830, 834 (S.D. Miss. 2001). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 835 (quoting *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)) (citation omitted). "A claim of fraud can neither be presumed nor stated in general terms." *Id.* (citing *Allen v. Mac Tools, Inc.*, 671 So.2d 636, 642 (Miss. 1996)) (citation omitted). "The circumstances of the alleged fraud, such as the time, place and contents of any false representation must be stated." *Id.* (citing *Allen*, at *id.*)

Here, Plaintiffs make general allegations of fraud based on the Citation for speeding. The Citation is not sworn to by the issuing police officer because said officer only does so when he files the Citation with the court. The officer fills out the ticket based on his observations – a vehicle registered to the Plaintiffs – was speeding. The officer is justified in his reasonable belief, based on articulable facts and circumstances, that the Plaintiffs were speeding.

The Citation is based on probable cause, not fraud. Miss. Code Ann. §63-9-21(3)(c) states: "The ticket shall include information that will constitute a complaint charging the offense for which the ticket was issued, and when duly sworn to and filed with a court of competent jurisdiction, prosecution may proceed thereunder." Thus, the citation is not sworn to by the police

18

officer until it is filed with the court. This is colloquially referred to as a "pocket ticket" in Mississippi. If the Plaintiffs were not driving or not speeding or the car was stolen, they have the opportunity to present said defenses in court. Plaintiffs' fraud claims fail to satisfy Rule 9 and controlling precedent. As such, they must be dismissed for failure to state a claim. Additionally, any derivative civil conspiracy claims also fail and must be dismissed.

## VIII. Plaintiffs fail to state a claim for punitive damages.

To recover punitive damages under Mississippi law, the claimant must prove by clear and convincing evidence that the defendant "acted with actual malice, gross negligence which evidences a willful wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a). Punitive damages, predictably, are considered an extraordinary remedy and are not generally favored in Mississippi jurisprudence. *Crechale v. Carroll Fulmer Logistics Corp.*, No. 3:19-CV-617, 2020 WL 4927508, at *4 (S.D. Miss. Aug. 21, 2020) (citing *Derr Plantation, Inc. v. Swarek*, 14 So.3d 711, 718 (Miss. 2009). "Such damages, you see, should be reserved only for the most egregious cases." *Id.* As the Plaintiffs have failed to sufficiently allege violations of their constitutional rights or fraud, they cannot plausibly allege a claim for punitive damages. The Court should dismiss the Plaintiffs' punitive damages claims accordingly.

## IX. Plaintiff's request for class action certification should be denied.

Plaintiff's request for class action certification should be denied for the following reasons:

1) The amount in controversy does not exceed $5 million.
2) Plaintiffs fail to plead viable federal question claims under §1331.
3) Plaintiffs fail to show the requisite elements of numerosity.
4) The named plaintiffs are not adequate representatives for the reasons stated *supra*.

5) The class is vague and not ascertainable.

6) All parties – including the primary defendants – are citizens of Mississippi, therefore there is no minimal diversity. Additionally, the mandatory local controversy and home state exceptions to CAFA apply and mandate that a district court shall decline to exercise jurisdiction. 28 U.S.C. § 1332(d)(4).

## X. **Plaintiff's state law claims should be dismissed with prejudice due to lack of supplemental jurisdiction.**

In considering whether to exercise supplemental jurisdiction, it is appropriate for the Court to consider judicial economy, convenience, and fairness. Further, 28 U.S.C. § 1367(c)(3) states that the Court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." Such is the case in this matter, as Plaintiff fails to adequately plead any federal claims.

WHEREFORE all claims against this Defendant should be dismissed with prejudice and/or stayed pursuant to F.R.C.P. 12(b)(6) and Rule 9.

RESPECTFULLY SUBMITTED, this the 14th day of April, 2025.

/s/ *S. Mitchell McCauley*
S. MITCHELL MCCAULEY (MSB NO. 106498)
*Attorney for Defendant, Intellisafe, LLC*

ROBERT W. WILKINSON (MSB No. 7215)
S. MITCHELL MCCAULEY (MSB No. 106498)
Wilkinson, Williams, Bosio & Sessoms, PLLC
734 Delmas Avenue (39567)
Post Office Box 1618
Pascagoula, MS 39568-1618
Tel: (228) 762-2272; Fax: (228) 762-3223
rwilkinson@wwbslaw.com
mmccauley@wwbslaw.com