## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**GERRY MALLORY, individually and**
**on behalf of all others similarly situated**                                     **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 2:25-cv-10-KS-BWR**

**CITY OF HATTIESBURG,**
**INTELLISAFE, INC., ANNA RUSH,**
**STEVEN ADAMSON, ELIZABETH PORTER,**
**CHIEF HARDY SIMS, JOHN DOES 1-10,**
**and ACME COMPANIES 1-10**                                              **DEFENDANTS**

## <u>MEMORANDUM OPINION AND ORDER</u>

This cause comes before the Court on the Motion to Dismiss or, in the alternative, Motion

to Stay [12] filed by Defendant IntelliSafe, LLC ("IntelliSafe") and Defendant's F.R.C.P. 12(b)(6)

Motion to Dismiss [16] filed by the City of Hattiesburg, Anna Rush, Steven Adamson, Elizabeth

Porter, and Chief Hardy Simms ("City's Motion"). These motions have been fully briefed and are

now ripe for ruling. Having reviewed the parties' submissions and the relevant legal authority, and

otherwise being duly advised in the premises, the Court finds the Motions are well taken and will

be granted in so far as the federal claims are concerned, and the Court will decline to exercise

supplemental jurisdiction over the state law claims for the reasons below.

### I.    BACKGROUND and ALLEGATIONS OF COMPLAINT

The City of Hattiesburg contracted with IntelliSafe in March 2024 for IntelliSafe to provide

the City (specifically the Hattiesburg Police Department) with services and equipment, including

specialized speed cameras used by Hattiesburg Police Officers that allow the officers to measure

speeds of passing automobiles. In this case, the speed cameras have been utilized by police officers

in school zones, resulting in citations to "Purported Violators" of the posted speed limit. Plaintiff

alleges that IntelliSafe, along with the other municipal defendants, have adopted a policy "that

ultimately results in the extortion of money from unsuspecting citizens who are coerced into

**EXHIBIT A**

paying fines for speeding citations ("Citations") . . . ." [1] at ¶ 3.[1]

Putting the legal conclusions replete throughout the Complaint aside, Plaintiff's

allegations, along with the attachments to the Complaint, reveal the following:

> Equipped with specialized, automated cameras provided by IntelliSafe, Hattiesburg Police Officers hide in nearby bushes and/or behind signs within school zones and use the cameras to record the speeds of passing vehicles. [1] at ¶ 11.
>
> Upon recording a vehicle travelling in excess of the speed limit through a school zone, the Hattiesburg Police Officer issues a speeding Citation to the registered owner of the vehicle without ever pulling the vehicle over to verify the identity of who was actually driving. *Id.* at ¶ 12.
>
> The Police Officer signs a sworn affidavit (the Citation) stating that he/she knows that the registered owner of the vehicle was driving at the time of the speeding infraction. *Id.* at ¶ 13; Ex. D.[2]
>
> The officer then forwards the Citation to IntelliSafe who is responsible for processing and transmitting the Citations to Purported Violators. *Id.* at ¶ 15.
>
> IntelliSafe then mails an "altered" Citation (bearing the seal of the City of Hattiesburg) to the registered owner, along with payment instructions. *Id.* at ¶ 16.
>
> The item mailed by IntelliSafe to Plaintiff contains two pages, and each page contains the following statement:
>
> THREE OPTIONS TO ADDRESS THIS CITATION
>
> 1. Complete a diversion program by paying a reduced fee of $230 and watching a short video online at **www.CourtPayOnline.com**. By completing the diversion program and paying the reduced fee, this ticket will not go on your driving record.
>
> 2. Contest this citation by visiting **www.CourtPayOnline.com** or calling **(855) 910-1558** to schedule your date to appear in court.
>
> 3. Pay the citation in full. By doing so, this ticket will go on your driving record. You may instead choose the diversion program mentioned above.

---

[1] *See also* [1] at ¶ 37.

[2] The Complaint states that Exhibit D is a true and correct copy of the Citation that Plaintiff received from IntelliSafe. [1] at fn. 6. The Court notes that Exhibit D to the Complaint contains two pages, with the first page bearing the seal of the City of Hattiesburg and stating, "Citation Enclosed." This first page appears to be a cover page that also addresses the three options available for addressing the Citation. [1] at p. 1.

If you have questions about this citation call **(855) 910-1558** or visit <u>www.CourtPayOnline.com</u>.

[1] at Ex. D.

The Citation also states on the first page: "Participation in the diversion program is deemed an admission of guilt and waiver of your right to appeal. Failure to deal with this citation may result in this being forwarded to a collections company, which could result in additional penalties." [1] at Ex. D at p. 1.

IntelliSafe directs Purported Violators to review an "FAQ" document which purports to answer "frequently asked questions" regarding the Citation(s).[3] *Id.* at ¶ 17.

The FAQ, attached as Exhibit B to the Complaint, state in relevant part:

**Is this legal?**

Yes, the CITY OF HATTIESBURG City Council has passed ORDINANCE 2721 & 1058 . . . TO PROVIDE FOR THE ENFORCEMENT OF CERTAIN TRAFFIC VIOLATIONS BY AUTOMATED MEANS AND CIVIL PENALTIES FOR THOSE CERTAIN VIOLATIONS ENFORCED BY AUTOMATED MEANS, AND OTHERWISE PROVIDING WITH RESPECT THERETO.

**That's not my car!**

Please contact the Help Desk (855) 910-1558 or contact us at <u>help@courtpayonline.com</u> for assistance in this matter.

**I was not driving!**

As the owner, you are responsible for this citation. If someone else was driving, you can have them go online and pay using your citation information. If you need assistance please contact our Help Desk (855) 910-1558.

**Can I contest this citation in Court?**

Yes, your Court Date is listed on your citation. If you require assistance or further explanation, then please call our Help Desk (855) 910-1558. By choosing

---

[3] Plaintiff claims that the FAQs, attached as Exhibit B, were replete with misrepresentations that fraudulently coerced Plaintiff into paying the fine. [1] at ¶ 67. Examples of such alleged misrepresentations include: (1) that the Hattiesburg City Council passed certain ordinances (1058 and 2721) to provide for the traffic enforcement by automated means, when enforcement by automated means violates Miss Code Ann. § 17-25-19, and the texts of those ordinances are not available to view; (2) that the hearing date is listed on the Citation when the hearing date is not a court date at all but rather a meeting with a representative of IntelliSafe; (3) that as the owner you are responsible for the citation; (4) that if the citation is unsuccessfully contested, the violation will be reported to the violator's insurance carrier and it will go on the violator's driving record; (5) that a purported violator will forfeit his or her right to be seen by a judge if they request an extension for payment of the citation; and (6) if payment is not made by the due date, a late fee will be added, and if payment is not received within 30 days of the due date, it goes to a collection agency. *See id.*; Ex. B.

to contest, the presiding municipal court will take responsibility for this violation. Any further [sic][4]

**Does this go on my insurance?**

. . . . [i]f this citation is contested in court and you are unsuccessful, then this violation will be reported to your insurance carrier.

**Does this go on my driving record?**

. . . . [i]f this citation is contested in court and you are unsuccessful, then this violation will be recorded on your driving record.

**Is there a payment plan?**

Currently, there are no payment plan options for Mississippi violators. If you require a 30-day extension for payment, then please contact an associate using our Help Desk (855) 910-1558 or email us at Help@courtpayonline.com
**BE ADVISED: REQUESTING A 30-DAY EXTENSION WILL FORFEIT THE OPTION OF BEING SEEN BEFORE A JUDGE FOR THIS VIOLATION.**

[1] at Ex. B.

On or about August 13, 2024, the automobile registered to Plaintiff was allegedly recorded speeding when a Hattiesburg Police Officer captured Plaintiff's automobile traveling in excess of the posted speed limit (26 MPH in a 15 MPH zone), but the officer did not conduct a traffic stop to identify the driver. [1] at ¶¶ 43-45.[5]

On or about September 14, 2024, Plaintiff received a mailed notice of the Citation, and based on the fraudulent statements accompanying the Citation, Plaintiff believed in good faith that the $230.00 fine related to the Citation was due on September 15, 2024. *Id.* at ¶ 48.

The hearing date listed on the Citation was September 23, 2025 (eight days after the payment due date). *Id.* at ¶ 49.

The hearing date is not a hearing date at all, but rather a meeting with a representative of IntelliSafe, some of which have told Purported Violators that they are appearing for an "arraignment" even though no judge is present and court is not in session. *Id.* at ¶ 67(b).

---

[4] Unfortunately, the answer cuts off and does not continue onto Page 2; thus, it is unclear whether Exhibit B to the Complaint is the entire exhibit.

[5] Importantly, Plaintiff does not allege in the Complaint that he was *not* driving the vehicle at the time it was captured in the photograph on August 13, 2024.

Plaintiff reasonably relied on IntelliSafe's false misrepresentations, which included but are not limited to the false representation that Plaintiff was responsible for the Citation, even if he wasn't driving at the time of the infraction. *Id*. at ¶ 50.

Based on the misleading information offered by IntelliSafe, Plaintiff logged on to the payment portal and paid the $230.00 fine on September 15, 2024. *Id*. at ¶ 41.

The way the policy/scheme is designed, implemented and enforced assumes the guilt of the owner of a vehicle, before the citation is even filed with the Hattiesburg Municipal court. By requiring that the penalty be paid prior to the scheduled "hearing date," Plaintiff and members of the proposed class were deemed guilty without a hearing . . . . *Id*. at ¶ 69.

Exhibit E to the Complaint shows that Regnal Blackledge claimed to not be driving, and the Municipal Prosecutor informed him the Citation was dismissed. [1-5].

In his Complaint, Plaintiff next makes allegations regarding the class and then brings the following causes of action:

Count I- Deprivation of Fourteenth Amendment Right to Equal Protection

Count II- Deprivation of Due Process Under the Fifth and Fourteenth Amendments

Count III- Deprivation of the Right to Confront Witnesses Under the Sixth Amendment

Count IV- Civil Conspiracy

Count V- Fraud

Count VI- Declaratory and Injunctive Relief

Count VII- Municipal Liability Under 42 U.S.C. § 1983

## II.     DISCUSSION

### A.  Legal Standard for Rule 12(b)(6) Motions

Rule 12(b)(6) allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any

documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In *Ashcroft v. Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. 556 U.S. 662, 678 (2009). First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Id.* at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 Fed. App'x 466, 470 (5th Cir. 2009) (citation omitted).

Generally, when considering a motion to dismiss, courts are limited to the Complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). Courts may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Id*. "Documents that a defendant

attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). When a party presents matters beyond the pleadings on a motion to dismiss, the court has complete discretion whether to accept such matters. *Isquith ex rel. Isquith v. Middle S. Utils., Inc*., 847 F.2d 186, 196 n.3 (5th Cir. 1988) (citing Fed. R. Civ. P. 12(b)) (additional citations omitted).  However, "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. (quoting Fed. R. Civ. P. 12(d)).

### B.  Analysis

To support various arguments, IntelliSafe and Plaintiff have submitted several affidavits that address facts not plead in the Complaint. *See* [20-1], [20-2], [20-4], [22-1]. The Court declines to accept the matters outside of the pleadings or try this case on the merits when considering a Motion to Dismiss for failure to state a claim under Rule 12(b)(6). The Court is also not willing to transform IntelliSafe's Motion into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) when no discovery has taken place and the parties' submissions on the motions are replete with issues of fact, many unsubstantiated by any record evidence and, again, are simply not appropriate for consideration on a Rule 12(b)(6) motion. This is particularly true regarding the first two arguments presented by IntelliSafe.

 IntelliSafe first argues that the enforcement system at issue in this case is permitted under Mississippi law—to which Plaintiff responds to the contrary, i.e., that the system instead violates Mississippi law. [13] at p. 4; [20] at p. 7-9. IntelliSafe next argues that Mississippi Code Section 17-25-19, which implements a state-wide ban on any local government's use of automated recording equipment or systems for traffic enforcement, does not apply because the enforcement

system at issue here is not "automated." [13] at p. 5-7. Again, Plaintiff responds to the contrary— that the system indeed violates the statute. [20] at p. 10-12. The Court finds that these issues pertain to the merits of the case and have been raised prematurely. Thus, the Court will not address such arguments at this time.[6]

"[A] Rule 12(b)(6) motion does not attack the merits of the case; it merely challenges the pleader's failure to state a claim properly." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (3d ed.). Aside from the summary-judgment-type arguments, IntelliSafe seeks dismissal of Plaintiffs' Complaint on certain federal claims for lack of standing[7] and others for failure to state a plausible claim for relief.[8] And this is where the Court will focus its analysis.

Plaintiff states that he has alleged injuries pursuant to 42 U.S.C. § 1983 and § 1988,[9] which are two-fold, one being a violation of his due process rights and the other being a violation of his equal protection rights under the law.[10] [20] at p. 14; [25] at p. 4. All Defendants argue that Plaintiff lacks standing because "he chose[] to pay the citation rather than challenge the citation with the resources provided." [13] at p. 7; [17] at p. 3. It seems that Defendants' are arguing for dismissal

---

[6] It is worth noting that in the Fifth Circuit, a violation of state law does not constitute a constitutional violation or a violation of federal law. *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (finding that "a violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights.").

[7] Although IntelliSafe brings its motion under Rule 12(b)(6), standing is a jurisdictional question that must be resolved as a preliminary matter either by a motion under Rule 12(b)(1) or by the court's own motion. *Perrin v. Gulfport-Biloxi Reg'l Airport Auth.*, No. 1:04CV829WJG-JMR, 2006 WL 8452690, at *1 (S.D. Miss. Mar. 16, 2006) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)).

[8] Although IntelliSafe argues that Plaintiff has failed to sufficiently state a claim on each of the state-law causes of action, the Court will not be addressing those arguments because it will not be exercising supplemental jurisdiction over those claims.

[9] Section 1988 does not create a private cause of action and does not confer federal jurisdiction. *See Harding v. Am. Stock Exch., Inc.*, 527 F.2d 1366, 1370 (5th Cir. 1976) ("Section 1988 merely 'instructs federal courts as to what law to apply in causes of action arising under federal civil rights acts.' It does not create a federal cause of action for alleged deprivation of constitutional rights." (internal citation omitted))

[10] To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and that a person acting under color of state law violated that right. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 2004). Even if Plaintiff has sufficiently articulated rights secured by the Constitution in his Fourteenth Amendment due process and equal protection claims, IntelliSafe makes no specific argument as to whether Plaintiff has adequately pled that IntelliSafe was acting under color of state law. Accordingly, the Court will assume that Plaintiff has adequately pled it.

of the entire Complaint for lack of standing. However, this is not appropriate because when a complaint seeks multiple claims for relief, the plaintiff must show standing "to each claim for relief and each form of relief sought." *Rash v. Lafayette Cnty., Mississippi*, 752 F. Supp. 3d 594, 610 (N.D. Miss. 2024) (citing *Perez v. McCreary*, 45 F.4th 816, 821 (5th Cir. 2022)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("And standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages).")

After careful consideration, the Court finds that the crux of Defendants' arguments regarding standing is directed toward Plaintiff's procedural due process claim.[11] IntelliSafe's arguments for dismissal of the substantive due process and equal protection claims are more akin to a general failure to plead sufficient facts to state a claim. The individual Defendants also contend they are all entitled to absolute and/or qualified immunity on the various claims against them. The Court will address each of these grounds for dismissal accordingly.

### 1. Plaintiff lacks standing for a procedural due process claim.

#### a. Legal standard for standing

"Whether a plaintiff has standing 'is the threshold question in every federal case.'" *Wilson v. Centene Mgmt. Co., L.L.C.*, 144 F.4th 780, 787 (5th Cir. 2025) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "In order to preserve the separation of powers, Article III of the United States Constitution limits judicial power to cases and controversies." *Williams v. Bienville*

---

[11] In addition to the standing argument, IntelliSafe also urges that Plaintiff's Complaint "fails to state a claim" for a violation of procedural due process. [13] at p. 10. IntelliSafe's argument focuses on determining the *adequacy* of the process afforded. Because the Court finds that Plaintiff lacks standing for a procedural due process claim, this additional argument will not be addressed. Also, to the extent Plaintiff attempts to bring a due process claim under the Fifth Amendment in Count II, IntelliSafe is correct that the Fifth Amendment applies only to actions of the federal government. *See Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020) (holding that the plaintiff failed to state a claim under the Fifth Amendment due process clause because the defendant "was an officer of the state of Louisiana rather than of the federal government"). Because there is no federal government action alleged in this case, a due process claim under the Fifth Amendment is not viable.

*Orthopaedic Specialists, LLC*, 737 F. Supp. 3d 411 (S.D. Miss. 2024), *appeal dismissed sub nom. Williams v. Bienville Orthopaedic Specialists, L.L.C.*, No. 24-60365, 2024 WL 5330715 (5th Cir. Sept. 6, 2024) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006)). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake in the case — in other words, standing.'" *Id*. (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)) (internal quotation marks omitted in the original).

There are three elements that a plaintiff must show to establish standing: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Gov. of Tex.,* 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). As "the party invoking federal jurisdiction," Plaintiff "bears the burden of establishing these elements." *Lujan,* 504 U.S. at 561. Plaintiff must meet this burden "'with the manner and degree of evidence required at the successive stages of the litigation,'" which means that "on a motion to dismiss, he must allege facts that give rise to a plausible claim of . . . standing." *Cornerstone Christian Sch. v. Univ. Interscholastic League,* 563 F.3d 127, 133–34 (5th Cir. 2009) (quoting *Lujan,* 504 U.S. at 561). Here, Plaintiff cannot establish standing due to lack of causal connection between the injury and Defendants' conduct.

The first element of standing is a concrete injury-in-fact. "The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Adams v. City of Harahan*, 95 F.4th 908, 913 (5th Cir. 2024) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). In arguing the validity of his procedural due process claim, Plaintiff argues that there are two injuries. First, Plaintiff argues that "was deemed guilty prior to having the opportunity to be heard in court," and for that, "the Plaintiff's due process rights, specifically his right to defend

himself in court, were taken away from him." [20] at p. 18. Plaintiff also claims he suffered an injury through the loss of the $230 he paid for the Citation. [20] at p. 19. As will be shown, with either injury Plaintiff cannot establish a causal connection to a lack of due process.[12]

### i. If Plaintiff's injury is lack of a hearing, Plaintiff cannot establish a causal connection.

Although not crystal clear, it appears that Plaintiff claims that he was denied the opportunity to defend himself, i.e., he did not contest the Citation, because of the false and misleading statements IntelliSafe made in the FAQs. However, because Plaintiff never alleges that he was not driving or had any other valid defense, the Court finds he cannot establish that he was deprived of his right to contest the Citation.

Without any Fifth Circuit law on this issue, the Court is persuaded by the analysis in *Rector v. City and Cnty. of Denver*, 348 F.3d 935 (10th Cir. 2003).[13] In *Rector*, two plaintiffs argued their due process rights were violated because the parking tickets that were issued erroneous led recipients to believe that a late fee would be imposed whenever the ticket is paid outside the twenty-day window, even if contested on a timely basis. *Id.* at 942. Plaintiffs complained that the language contained in the ticket pressured recipients to pay rather than challenge the ticket. *See id.* They claimed that this misapprehension violated due process because it restricts the recipient's opportunity to be heard and present objections. *See id.* Upon appellate review, the Seventh Circuit found that one of the plaintiffs, Mrs. Rector, lacked standing to maintain her claim. *See id.* at 945. As the Court explained, because she presented no basis for challenging the ticket on the merits,[14] she sustained no injury-in-fact caused by a deprivation of due process. *See id.*

---

[12] There is no need to address the third element of standing. It has not been disputed that the relief Plaintiff seeks—an order declaring the policy unconstitutional, awarding damages, and enjoining further use of the specialized speed cameras and issuing Citations by mail—would redress any injury.

[13] Although the case involved a motion for summary judgment, standing to bring their claims was still at issue.

[14] She admitted that she parked in a metered spot and that she did not put any coins in the meter. 348 F.3d at 944.

In its thorough discussion of this issue, the court made clear that although the right to due process in connection with a deprivation of a property interest is absolute, "the Constitution does not protect procedure for procedure's sake." *Id.* at 943. The court explained, "Unless a person asserts some basis for contesting a governmental deprivation of life, liberty, or property, he is not injured by the defective procedures he has no occasion to invoke." *Id.* at 943-944. To illustrate the point, the court thoroughly examined two U.S. Supreme Court cases[15] and noted that difference turns on whether the underlying charge is contested when it explained as follows:

> The distinction between *Codd* and *Carey* lies in adopting an *ex ante* perspective on the right to due process hearings. The *Carey* plaintiffs denied the substance of the underlying allegations made against them. Their injury, viewed *ex ante*, is that they were denied the opportunity to convince school administrators that they should not be suspended. Thus while *ex post*, their loss on the merits precluded any claim for compensatory damages, the denial of the opportunity to sway school officials towards their cause constituted an injury in fact. By contrast, the plaintiff in *Codd* did not challenge the substantial truth of the damaging material set forth in his file. Even by his own reckoning of the facts, the hearing would not have vindicated any rights. There was nothing for the hearing to accomplish. *Codd* thus establishes that failure to provide a hearing does not violate due process so long as the claimant does not contest the legitimacy of the underlying deprivation.

*Id.* at 944 (internal citations omitted). Having found that Mrs. Rector asserted no legal basis for challenging the ticket, the court further found that any deficiencies in the notice caused no injury because "there was nothing for a hearing to decide." *Id.* at 945. The court then held that, even assuming that the parking tickets were misleading in the way the plaintiffs claimed, Mrs. Rector did not have standing to bring the suit and represent the class, because her injury, the payment of the fine, was traceable not to the defective notice but to her lack of any legal defense. *Id.*

The Court finds the same scenario here. Just as Mrs. Rector claimed that she was misled into paying the ticket and not engaging in the hearing offered, Plaintiff complains that the misleading statements in the FAQs pressured him to pay the ticket, thereby giving up his right to

---

[15] The court examined *Carey v. Piphus*, 435 U.S. 247, 266 (1978) and *Codd v. Velger*, 429 U.S. 624 (1977).

contest the Citation.[16] Likewise, just as Mrs. Rector had no valid defense, Plaintiff makes no allegation that he was not driving or that he had any other valid defense to the ticket. As such, Plaintiff has failed to plead any injury that was caused by a denial of procedural due process. *See Michael H. v. Gerald D.*, 491 U.S. 110, 126 n. 5 (1989) (plurality opinion) ("We cannot grasp the concept of a "right to a hearing" on the part of a person who claims no substantive entitlement that the hearing will assertedly vindicate."). Therefore, the Court finds that Plaintiff lacks standing to bring a procedural due process claim on this basis.

> ii. **If Plaintiff's injury is the payment of the fine, he cannot establish a causal connection to a lack of procedural due process.**

Plaintiff also claims, however, that his injury is the loss of the money he paid for the Citation. [20] at p. 19. "Property interests protected by the procedural due process clause include, at the very least, ownership of real estate, chattels, and money." *Est. of Holt v. City of Hattiesburg*, 800 Fed. App'x 228, 232 (5th Cir. Feb. 5, 2020) (quoting *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 822 (5th Cir. 2007)). IntelliSafe does not take issue with the payment of the $230 being a sufficient injury, and the Court finds, in this instance, Plaintiff has alleged a constitutionally cognizable injury in-fact for purposes of Article III standing. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017) ("the injury alleged as an Article III injury-in-fact need not be substantial; 'it need not measure more than an 'identifiable trifle.' This is because 'the injury in fact requirement under Article III is qualitative, not quantitative, in nature.' " (citation omitted)).

Once the life, liberty, or property interest is identified, the deprivation of that interest must have resulted from government action. *See Bynum v. City of Magee, Miss.*, 507 F. Supp. 2d 627, 637 (S.D. Miss. 2007) (quoting *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir.

---

[16] As for Plaintiff's complaints about the adequacy of the process for contesting the Citation, i.e., the purported arraignment, the lack of filing the Citation with the Municipal Court, and the like, because Plaintiff paid the fine and never personally engaged in or experienced the process, he could not have suffered any injury from those actions either.

1991)). IntelliSafe argues Plaintiff lacks standing for a procedural due process claim because he chose to pay the Citation rather than challenge it with the procedure for doing so that was provided. Plaintiff, on the other hand, contends that although he paid the $230, he did not do so voluntarily but did so only because of the allegedly false and misleading statements made by IntelliSafe.

The present issue for standing is whether Plaintiff can show a causal connection between the injury and the conduct complained of when he cannot show that he ever used the procedures available to challenge the $230 fine assessed against him. To argue that he cannot, IntelliSafe relies on *Stubbs v. City of Center Pointe, Ala.,* 988 F. Supp. 2d 1270 (N.D. Ala. 2013). In *Stubbs*, the city contracted with a private company to implement an ordinance that authorized automated photographic enforcement of traffic violations, including speeding. *Id.* at 1273. One of the plaintiffs, Ms. Stubbs, alleged that she received a notice of a violating the ordinance for allegedly running a stop sign. *Id.* She also received "instructions on how to 'take care of the Notice.'" *Id.*

"The instructions stated that she must select one of two options: either pay the civil penalty by personal check, money order, or credit card, or exercise her right to a hearing by submitting a hearing request and appearing at the scheduled time." *Id.* Stubbs also alleged that, rather than submitting a hearing request, she paid the ticket "because the Defendants left her with the false impression that the administrative hearing would be binding and would be conducted by the 'Municipal Court.'" *Id.* She further alleged: "By leaving the Plaintiff with the false impression that she would appear in front of a 'court,' the Notice of Violation carried the full imprimatur of the State of Alabama and misled and intimidated Ms. Stubbs and the Class members into paying the 'fine.'" *Id.* at 1273-74.

On a motion to dismiss, the district court found that Ms. Stubbs lacked standing. *See id.* at 1277-78. The court held that even though payment of the fine could be considered an injury, the plaintiff's injury was not causally connected to the conduct about which she complains "because

14

she paid her fine without taking advantage of the process provided by the City to challenge it." *Id.* Moreover, "[e]ven if that process were insufficient to satisfy constitutional standards, it did not cause Ms. Stubbs to voluntarily pay her fine; no traceable connection exists." *Id.* at 1278.

Another district court case from the Eleventh Circuit noted that this issue presents a circuit split. *See Georgia Elec. Life Safety & Sys. Assn, Inc. v. City of Sandy Springs, Georgia*, No. 1:18-CV-1041-AT, 2018 WL 10753067, at *9 (N.D. Ga. Dec. 12, 2018), aff'd, 965 F.3d 1270 (11th Cir. 2020). The court noted that the Sixth and Fourth Circuits have held that a plaintiff lacks standing to bring a procedural due process claim where the plaintiff receives a fine and opts to pay the fine rather than challenge the fine through the offered process. *See id.* (citing *Herrada v. City of Detroit*, 275 F.3d 553, 558 (6th Cir. 2001) (holding that plaintiff lacked standing to argue that hearings are not held despite requests by vehicle owners because she elected to pay traffic fine, issued pursuant to traffic camera citation system, rather than request hearing) and *Clark v. Humane* Soc. of Carroll Cnty., Inc., 2011 WL 2791041 at *6 (D. Md. July 13, 2011) aff'd, 468 F. App'x 342 (4th Cir. 2012) (explaining that courts have consistently held that, where an individual elects to pay a civil fine and thus avoid the procedures provided to contest the alleged violation, that individual lacks standing to challenge the procedures they did not use)).

The court further noted that, on the contrary, the Eighth Circuit has held that plaintiffs who receive citations have standing to challenge procedures for contesting those citations, even if they have not utilized the procedures provided. *See id.* at *10 (citing *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016) (finding that "allegations that the procedure is inadequate – even if drivers shun it — sufficiently establishes an injury in fact for Article III standing)."

Given the lack of guidance from the Fifth Circuit on this issue after exhaustive research, this Court sides with the Sixth and Eighth Circuit, which have determined that when a plaintiff fails to avail themselves of the procedural process that is available, the injury, i.e., deprivation of

a property interest, could not reasonably be caused from the lack of due process, and therefore, standing is lacking. Because Plaintiff did not contest the Citation and engage in the process, any inadequacy in the process could not have caused him the deprivation of his property interest.

Plaintiff argues that *Stubbs* is distinguishable due to the "actual frauds perpetrated on the Purported Violators in this case," which were not present in *Stubbs*. [20] at p. 13. However, that is not accurate. The plaintiff in Stubbs did allege that she was misled by the notice she received and intimidated into paying the fine. 988 F. Supp. 2d at 1274. Plaintiff had the opportunity to contest the ticket. He was in no way *required* to pay the fine. Plaintiff claims to have relied on the false and misleading statements in the FAQs, but he never alleges that he called the number provided to inquire about the statements that caused him concern or about contesting the ticket. While Plaintiff may effectively be stating a common law claim for fraud against IntelliSafe, he cannot establish standing for a violation of procedural due process.[17]

### 2. Plaintiff fails to state a claim for substantive due process violation.

The Due Process Clause provides heightened protection against government interference with certain fundamental rights and liberty interests. *Washington. v. Glucksberg*, 521 U.S. 702, 720 (1997). It "specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" *See id*; *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–34 (1973) (noting that a fundamental right is a right either explicitly or implicitly guaranteed by the Constitution.). "Only state action that impinges on a fundamental right is subject to evaluation under substantive due process." *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (citing *Glucksberg*, 521 U.S. at 719-22). Finally, the Due Process Clause of the Fourteenth Amendment was intended to prevent

---

[17] Plaintiff also argues that the traffic violations in *Stubbs* were civil offenses, unlike Mississippi where speeding is a criminal misdemeanor. This is a distinction without a difference. Regardless of the nature of the charge, Plaintiff still had an opportunity to contest the Citation prior to being assessed any fine or being adjudicated guilty of a misdemeanor.

government "from abusing [its] power or employing it as an instrument of oppression." *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) (quoting *DeShaney v. Winnebago County Dep't of Soc. Svcs*, 489 U.S. 189, 196 (1989)).

Plaintiff urges that oppression is at play here because the traffic enforcement program infringes on his fundamental right to be "innocent until proven guilty." [20] at p. 16. Assuming, without deciding, that this legal maxim qualifies as a fundamental right, Plaintiff still fails to state a claim for substantive due process because the notion that this right was infringed, i.e., that he was ***not*** innocent until proven guilty, is undermined by the documents attached to the Complaint. The cover page to the Citation clearly states, "Participation in the diversion program is deemed an admission of guilt and waiver of your right to appeal." [1] at Ex. D at p. 1. Simply put, Plaintiff chose to pay the fine and admit guilt.

Additionally, Mississippi's Uniform Traffic Ticket Law states that, among other information required to be on a traffic ticket, "[t]he ticket shall include information that will constitute a complaint charging the offense for which the ticket was issued, and when duly sworn to and filed with a court of competent jurisdiction, prosecution may proceed thereunder." Miss. Code Ann. § 63-9-21. The traffic ticket is simply a document that gives the Purported Violator notice of the charges against him. *See Scott v. City of Booneville*, 962 So. 2d 698, 702 (Miss. Ct. App. 2007) (noting that "[t]he Uniform Traffic Ticket serves as an indictment in this case, putting the defendant on notice of the charges against him.").

The Citation at issue here gave Plaintiff notice of the charges and provided an option of paying the fine and completing the diversion program, which if chosen, and only if chosen, is deemed an admission of guilt. Otherwise, there can be no adjudication of guilt of a misdemeanor because the ticket had not yet been filed with the Municipal Court. Another option is that the Purported Violator may contest the charge, appear on the day stated on the "ticket" to answer the

charge. These seem to be the same options given to any person charged with a crime, that is, notice of the charges and the ability to plead guilty or contest the charge and raise any defenses, such as "it was not me."[18] Once again, Plaintiff chose to pay the fine, which he was notified was an admission of guilt. If he wanted to avoid being found guilty, he clearly had the option to contest the Citation. There is nothing in the allegations that implicates an infringement of the purported fundamental right to be innocent until proven guilty. Therefore, Plaintiff has failed to state a claim for violation of substantive due process.

### 3.   Plaintiff fails to state a claim for violation of equal protection.

To establish an equal protection violation, a party cannot merely prove disparate impact, he must "prove 'the existence of purposeful discrimination' motivating the state action which caused the complained-of injury." *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997) (quoting, *inter alia*, *McClesky v. Kemp*, 481 U.S. 279, 292-93 (1987)). To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) "a state actor intentionally discriminated against [him] because of membership in a protected class [,]" or (b) he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Texas Dep't of Ins.--Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) (internal citations omitted).

In the Complaint, these are the nucleus of facts giving rise to the Equal Protection claim:

By failing to properly identify the drivers of the vehicles, as alleged herein, the Defendants are depriving the Plaintiff and the proposed class members of equal protection under the law. To be clear, Purported Violators who receive Citations pursuant to the illegal, unconstitutional and conspiratorial scheme, by and through the illegal and unconstitutional policy promulgated, enacted, and/or enforced by the Defendants here, are treated differently than all other purported speed violators who receive traffic citations in the City of Hattiesburg through the normal traffic stop processes and procedures.

---

[18] This defense admittedly works when contesting the Citation, resulting in dismissal of the Citation, as evidenced in Exhibit E to the Complaint.

More specifically, Hattiesburg Police Officers who issue Citations under the illegal, unconstitutional and conspiratorial scheme, by and through the illegal and unconstitutional policy promulgated, enacted and/or enforced by Defendants, are not stopping vehicles that are allegedly speeding in school zones to positively identify the driver of said vehicles before issuing the complained-of Citations. Instead, as alleged above, the officers merely assume that the owner is the driver, but never actually conduct a traffic stop to verify this information. So, without knowledge of who is the actual driver, the officer issues a sham citation, under oath, to the owner of the vehicle, without ever actually knowing that he/she was driving at the time of the infraction.

As a result, Purported Violators such as the Plaintiff and the proposed class herein, are receiving false and/or fraudulent Citations for violations which they did not commit and are not being afforded the same privileges and/or immunities as all other speed violators within the City, i.e., those speed violators who are actually pulled over by Hattiesburg Police Officers. This is exactly the scenario that§ 17-25-19 was designed to prevent, i.e., that citizens are not wrongfully subjected to criminal violations which they did not commit.

Furthermore, the alternative diversion program wholly fails to advise Purported Violators of the statutory, State-sponsored diversion program which has been authorized, codified, and mandated by the State of Mississippi pursuant to Miss. Code Ann. § 63-9-11. Indeed, the coercive and/or extortive written material furnished to the Purported Violators, including the Plaintiff herein, encourages the Purported Violators to participate in the alternative diversion program offered through the private entity, IntelliSafe. The bottom line is that, by concealing the fact that a statutory, State-sponsored diversion program already exists and by advocating (and coercing) the acceptance of their alternative diversion program, the Defendants are denying equal protection under the law to the Plaintiff and the proposed class members.

The illegal, unconstitutional and conspiratorial scheme devised, proposed, implemented and administered by IntelliSafe, as well as the City of Hattiesburg's policy regarding the use of the specialized, automated camera equipment in school zones, wholly fails to satisfy the guarantees of the equal protection clause under any level of judicial review.

[1] at ¶¶ 92-96.

IntelliSafe argues that Plaintiff fails to allege that any protected class has been unfairly targeted. [13] at p. 14. The Court agrees. These facts do not reveal or even imply that this method of traffic enforcement discriminates against members of a protected class. Drivers that are stopped for a speeding violation versus those whose vehicle is photographed violating the speed limit

neither explicitly nor implicitly implicates a protected class.[19] The same is true for speeding violators who utilize the statutory diversion program versus those who are directed to the diversion program offered by IntelliSafe—there is no protected class implicated.

An equal protection claim does not arise from simply being treated differently, as Plaintiff seems to contend.[20] In other words, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws [or policies] are imperfect. Rather, as long as they do not burden a fundamental right or target a suspect class, state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (alteration added) (internal citations omitted).[21]

If discrimination against a protected class, such as those based on race or sexual orientation, is not implicated, like in this case, then the difference in treatment must only be supported by a rational basis. *See Gibson*, 700 F.3d at 239 ("The mere fact that a law impacts different individuals in different ways does not subject it to constitutional challenge unless [a plaintiff] can show that [the] law is so extreme as to lack a rational basis"); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review ... the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."). Defendants argue no heightened form of review is warranted, and as such, the policy must only bear a rational relation to a legitimate state purpose. [13] at p. 15; [17] at p. 15. The Court agrees.

---

[19] Plaintiff cites *Woods v. Edwards*, 51 F. 3d 577, 580 (5th Cir. 1995) seemingly for the proposition that a "discriminatory purpose" can apply to any identifiable class. [20] at p. 22. However, *Woods* involved a claim by a black inmate that he was treated differently from white inmates in lockdown. *See* 51 F. 3d at 580.

[20] *See* [1] at ¶ 92 (alleging simply that "[t]he equal protection clause 'direct[s] that all persons similarly situated should be treated alike'" and citing the *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (superseded by statute)). While that is true, and the Supreme Court is properly quoted here, the case goes on to explain further how equal protection works. It does not stop with the simplistic notion that similarly situated persons have to be treated alike. *See* 473 U.S. 439-442.

[21] Plaintiff argues that strict scrutiny should be applied based on a circular argument that he has stated a claim for equal protection because he alleges a violation of his fundamental right to equal protection. [20] at p. 24. Such argument misapprehends the well-settled law regarding equal protection claims, and the Court finds that the allegations of the Complaint fail to identify or implicate a fundamental right that any classification infringes upon. No one has a fundamental right to speed in a school zone.

It is instinctively obvious that issuing citations for speeding in a school zone, regardless of the method of doing so, is to protect school children's safety. Plaintiff posits that the Defendants chose to enact this policy because of the (substantially) increased revenue that could be generated from issuing citations without having to conduct a traffic stop. [20] at p. 23. Simply because the policy of using specialized speed cameras raises revenue does not make it unconstitutional. Raising revenue is a valid municipal endeavor. Like any other exaction, a fine does more than raise revenue, it discourages the fined activity. The production of revenue does not undermine a valid legitimate purpose, even if the justification is "retrospective logic." *See Idris v. City of Chicago*, No. 06C6085, 2008 WL 182248, *5 (N.D. Ill. Jan. 16, 2008). And there are several reasons to enforce traffic laws in school zones in this manner.

First, a system of photographic evidence from specialized speed cameras to issue citations reduces the cost of law enforcement in enforcing the speed limit in school zones. Also, it increases the proportion of the speeding offenses that are detected. Additionally, as the City points out, these specialized cameras are "utilized solely in school zones, where there is higher pedestrian traffic and a greater likelihood of a tragic accident. Moreover, private interests are protected to a greater degree here, as an officer is physically present at the scene and personally witnesses the traffic infraction being committed." [17] at p. 14. Given these factors, the Court finds that instituting a system that simultaneously raises money while improving compliance with traffic laws in school zones bears a rational relationship to a legitimate state interest. Consequently, Plaintiff fails to state a claim for equal protection.[22]

Aside from the allegations of the Complaint, Plaintiff also argues in response to the motion:

Indeed, all other speed violators in the State of Mississippi are afforded an actual traffic stop to properly and positively identify them prior to the issuance of any

---

[22] As IntelliSafe points out, Courts facing a similar scenario have found no equal protection violation because camera-assisted ticketing systems utilized for traffic law enforcement bear a rational relationship to a legitimate government interest. [13] at p. 15 (citing as an example, among others, *Hughes v. City of Cedar Rapids, Iowa,* 840 F.3d 987, 996 (8th Cir. 2016, which in turn cites *Idris v. City of Chicago,* 552 F.3d 564, 566 (7th Cir. 2009)).

citation. This is because the ***crime*** of speeding is considered a criminal misdemeanor in Mississippi. Thus, any officer who issues a speeding citation must ***know*** **who** committed the crime. By failing to pull over the Purported Violators (including Plaintiff) who are issued Citations pursuant to the illegal and unconstitutional scheme, the officers are treating the Purported Violators differently than all other persons who receive a citation for speeding in the State of Mississippi.

[20] at p. 23 (emphasis in original). The Court considers the gravamen of Plaintiff's complaint in this regard to be that law enforcement has not positively identified the offender before charging him with a crime. This distinction also fails to implicate a protected class or infringe a fundamental right.

Regardless of whether speeding is a crime in Mississippi, the identifiable classes are still the same—speeding violators who are pulled over by the police to receive a Citation and those who are caught on camera and mailed a Citation. There is still no protected class implicated. Because Plaintiff fails to allege that a protected class is either being treated differently or intentionally discriminated against, and because the Court finds that the policy of issuing speeding tickets in this case bears a rational relationship to a legitimate state interest, Plaintiff has failed to adequately plead a claim for an equal protection violation. Consequently, this claim will be dismissed.

### 4. Other claims that rely on there being a properly pled constitutional violation must be dismissed.

Without standing to pursue a procedural due process claim and not being able to state a claim for any other violation of due process or equal protection, Plaintiff's other claims, which by their nature rely on having a valid constitutional claim, must be dismissed. Namely, Count VI of the Complaint seeks declaratory and injunctive relief. In pleading this Count, Plaintiff states:

This case presents an actual controversy because the Defendants' present an ongoing denial of equal protection and due process to the Plaintiff, and others similarly situated, thereby subjecting him and others to serious, immediate and irreparable harm, warranting the issuance of a declaratory judgment and/or an injunction because there is no adequate remedy at law.

[1] at ¶ 127. The plain language of this allegation shows that Plaintiff's claims for declaratory and injunctive relief are contingent upon and tied to Plaintiff's constitutional claims. Although Defendants do not specifically seek dismissal of these claims, because the Court has found that Plaintiff either lacks standing to bring or has failed to/cannot state any cognizable constitutional claims, Count VI must also be dismissed.[23]

Similarly, because Plaintiff cannot establish standing for a violation of procedural due process due to not having engaged in the process to be heard, he also cannot establish standing for a violation of his Sixth Amendment right to confront witnesses against him. Had he contested the citation, he may very well have had that opportunity. Consequently, Count III will be dismissed.

Finally, in Count VII, Plaintiff sought a municipal liability claim against the City under 42 U.S.C. § 1983. Because a governmental entity cannot be liable for civil rights violations under a theory of respondeat superior or vicarious liability, such entity can be held liable under Section 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *See Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978); *Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). Here, because Plaintiff has failed to adequately plead that he was deprived of a federally protected right, there can be no municipal liability. Therefore, Count VII will also be dismissed.

### 5.   Claims against prosecutors are barred by absolute immunity.

Although the Court has already determined that the constitutional claims will be dismissed, it will briefly address the parties' arguments regarding absolute immunity. In his Complaint, Plaintiff attempts to plead claims against three of the City of Hattiesburg's prosecutors, Steven

---

[23] Finally, the Court need not address IntelliSafe's argument regarding class certification [13] at p. 18. "The class representative must have standing to represent a class of other allegedly injured persons. After all, if the class representative lacks standing, then there is no Article III suit to begin with — class certification or otherwise." *Wilson v. Centene Mgmt. Co., L.L.C*., 144 F.4th 780, 787 (5th Cir. 2025) (quoting *Flecha v. Medicredit, Inc*., 946 F.3d 762, 769 (5th Cir. 2020)).

Abramson, Anna Rush, and Elizabeth Porter. These Defendants argue that they are entitled to either absolute immunity or qualified immunity under the facts pled. Plaintiff argues these Defendants are not entitled to immunity because they have the "coercive power" to carry out this allegedly unconstitutional scheme, as well as the power and duty to enforce the policy and exercise "compulsion or constraint" when dealing with the Citations. [25] at p. 13 (citing *Campaign for S. Equal. v. Mississippi Dep't of Hum. Servs.*, 175 F. Supp. 3d 691 (S.D. Miss. 2016). However, just because one may possess potentially coercive or compulsive power does not mean they have used that power to violate someone's constitutional rights.

Prosecutors performing an advocate's role are officers of the court entitled to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273(1993); *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976) (under 42 U.S.C. § 1983 prosecutors are absolutely immune for acts "within the scope of their duties"); *Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021) ("Prosecutors are shielded by absolute immunity for activities 'intimately associated with the judicial phase of the criminal process,' including 'initiating a prosecution and [ ] presenting the State's case' ").

Plaintiff's theory that these prosecutors are agents of the City with coercive powers to violate individual citizens' constitutional rights is not borne out by Plaintiff's allegations in his Complaint. As for Defendants Rush and Porter, there are no allegations relating to any actions taken by them, let alone any instances of their exercising coercive power or taking actions outside of those performed within their normal prosecutorial duties.

The only particularized allegations against any prosecutor are made against Adamson. These allegations include the following: (1) Adamson calls the system "automated" [¶ 39]; (2) Adamson "evidently" "understands that if a person cannot be positively identified as the driver of a vehicle at the time of the infraction, said person cannot be held responsible for a criminal misdemeanor speeding violation." [¶ 62]; Adamson notified Regnald Blackledge that his Citation

would not be filed in the municipal court system and that Citation would be closed for all purposes [¶ 65]; and "Prosecutor Adamson recognized that he cannot hold someone accountable for a crime which they did not commit, or for which there is no evidence to support a conviction." [¶ 65].

These allegations do not connote any coercion or compulsion. Use of the word automated has nothing to do with the policy being unconstitutional. As for the other allegations against Adamson, if anything, they are opposite of coercion. The letter to Mr. Blackledge and Adamson's "understanding" and "recognition" shows an attorney dismissing a charge of speeding when someone contested the charge and raised a valid defense. None of these actions are, or alleged to be, outside the bounds of what prosecutors routinely have the authority to do. *See, e.g.*, Miss. R. Crim. P. 14.6(a) (addressing the discretion of a prosecuting attorney to dismiss an indictment).

Based on the foregoing, the individual Defendants are entitled to absolute immunity, or at the very least, Plaintiff has failed to state a claim against them for any constitutional violation. In any event, the federal constitutional claims against Defendants Adamson, Rush, and Porter will be dismissed.[24]

### 6.  Court declines to exercise supplemental jurisdiction.

Article III of the United States Constitution permits a federal court to exercise "[p]endent jurisdiction" over state-law claims that are closely related to a claim over which the court has subject-matter jurisdiction when "the entire action before the court comprises but one constitutional 'case.'" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  To that end, the federal statute provides, in relevant part:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the

---

[24] Plaintiff does not delineate any of the claims as being against a particular defendant, save for the municipal liability claim in Count VII. Even though the City of Hattiesburg has not moved for dismissal, without a constitutional violation, the claim cannot stand, and the Court dismissed it *sua sponte*.

same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Section 1367(c) provides that:

[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In deciding whether to exercise pendent jurisdiction over state-law claims, the district court "look[s] to the statutory factors set forth by 28 U.S.C. § 1367(c), and to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011) (first citing *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008), then citing *Carnegie– Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). While "no single factor is dispositive," *Mendoza*, 532 F.3d at 346, the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed," *Enochs*, 641 F.3d at 161 (quotations and citations omitted).

The Court has now dismissed all claims over which it had original jurisdiction. The Court also finds that the Complaint in this case presents novel issues of state law that are best decided by the Mississippi courts. For these reasons, the Court declines to exercise supplemental jurisdiction, and the remainder of the state-law claims will be dismissed as well.

### 7.  The Court will not give leave to amend.

Even though Plaintiff did not request that it be allowed to amend if the Court were to grant

the motions to dismiss, the Court will address it. Ordinarily, a court should provide a claimant an opportunity to amend his complaint prior to granting a motion to dismiss with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000)). However, dismissal without leave to amend is appropriate where any amendment would be futile or the plaintiff has presented his best case. *See Washington v. Weaver*, No. 08–30392, 2008 WL 4948612, at *3 (5th Cir. Nov. 20, 2008).

Plaintiff has by no means filed a bare-bones Complaint in this action. Its thirty-six (36) pages are so filled with such a substantial number of facts, it is hard to imagine that Plaintiff has not presented his best case. It is under those multitude of facts that the Court has found there is no constitutional violation giving rise to federal jurisdiction. The Court finds that amending to attempt to state one would be futile. Therefore, all federal claims will be dismissed with prejudice. As for any state law claims or any alleged conflict with existing state statutes, those claims are preserved. Plaintiff may pursue them in state court if he so choses.

## III.   CONCLUSION

Based on the foregoing, it is ORDERED that IntelliSafe's Motion to Dismiss or, in the alternative, Motion to Stay [12] and Defendant's F.R.C.P. 12(b)(6) Motion to Dismiss [16] filed by the City of Hattiesburg, Anna Rush, Steven Adamson, Elizabeth Porter, and Chief Hardy Simms are both GRANTED as follows:

1. Plaintiff's claim against all Defendants based on an alleged violation of the equal protection clause of the Fourteenth Amendment, as set forth in Count I, is hereby DISMISSED WITH PREJUDICE;

2. Plaintiff's claims against all Defendants based on an alleged violation of procedural or substantive due process under either the Fifth or Fourteenth Amendments, as set forth in Count II, are hereby DISMISSED WITH PREJUDICE;

3. Plaintiff's claim against the Defendants for a violation of the right to confront witnesses under the Sixth Amendment, as set forth in Count III, is hereby DISMISSED WITH PREJUDICE;

4.  Plaintiff's claims against the Defendants for declaratory and injunctive relief, as set forth in Count VI, are hereby DISMISSED WITH PREJUDICE;

5.  All Plaintiff's claims against the individual prosecutors, Defendants Adamson, Rush, and Porter are barred by absolute immunity and are hereby DISMISSED WITH PREJUDICE;

6.  Plaintiff's claim against the City for municipal liability under 42 U.S.C. § 1983, as set forth in Count VII, is DISMISSED WITH PREJUDICE;

7.  The Court declines to exercise supplemental jurisdiction over the state law claims, as set forth in Count II (abuse of process) Count IV (civil conspiracy, and Count V (fraud), and those claims are hereby DISMISSED WITHOUT PREJUDICE.

There being no further claims before this Court, this case is closed.

**SO ORDERED AND ADJUDGED** this 14th day of October 2025.


/s/ Keith Starrett
KEITH STARRETT
SENIOR UNITED STATES DISTRICT JUDGE