**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

JENNIFER KILGORE and
SHIRLEY HOWARD,
Individually and on behalf
of all others similarly                                    **PLAINTIFFS**
situated

v.                                                          **CAUSE NO. 1:25cv55-LG-RPM**

THE CITY OF MOSS POINT;
MAYOR BILLY KNIGHT
AND THE CITY
ALDERMEN, EACH IN
THEIR OFFICIAL AND
ELECTED CAPACITY; THE
MOSS POINT CHIEF OF
POLICE, in his official
capacity; INTELLISAFE,
LLC; JOHN DOES 1–10; and
ACME COMPANIES 1–10                                        **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**
**CONCERNING DEFENDANTS' MOTIONS TO DISMISS**

In this putative class action, Jennifer Kilgore and Shirley Howard claim that

the defendants violated their constitutional rights, as well as federal and state law,

by issuing speeding tickets based on photographic evidence instead of traffic stops.

The City of Moss Point, Mayor Billy Knight, the City Aldermen, and the Moss Point

Chief of Police (hereafter sometimes collectively referred to as "the Moss Point

Defendants") filed a [8] Motion to Dismiss Plaintiffs' Claims.  Intellisafe, LLC, also

filed a [18] Motion to Dismiss, or, in the alternative, [20] Motion to Stay Kilgore and

Howard's claims.  The parties fully briefed the Motions.  The Court required the

parties to file supplemental briefs addressing whether the *Heck* rule, the *Rooker-*

*Feldman* doctrine, and/or the *Younger* abstention doctrine apply to any of Plaintiffs' claims.  *See* Pls.' Suppl. Brief [41]; Moss Point Defs.' Suppl. Brief [42]; Intellisafe Suppl. Brief [43].  After reviewing the submissions of the parties, the record in this matter, and the applicable law, the Court finds that the Motions to Dismiss should be granted in part and denied in part.  Intellisafe's Motion to Stay is denied.

## BACKGROUND

In their Amended Complaint, Plaintiffs allege that Intellisafe provides cameras to the City of Moss Point Police Department so that officers can film motor vehicle speed violations.  Upon receipt of video of a violation, Intellisafe mails traffic tickets to the registered owner(s) of the speeding vehicle.  Plaintiffs claims that the tickets issued pursuant to this program are "intimidating and coercive" and "deliberately designed to frighten citizens into paying fines."  Am. Compl. [3] at 13.  Intellisafe and the City of Moss Point split the revenue obtained from fines paid by vehicle owners pursuant to this program.  *Id.*

> The Defendants' scheme provides further coercion by offering a "diversion program" if the alleged violator pays by a stated date and watches a video . . . . However, a defendant who does not pay under the diversion program is directed to call a toll[-]free number (to Intellisafe) in order to schedule a court date.  If a defendant instead appears for the court date provided on the citation he encounters only Intellisafe employees rather than a Judge or Prosecutor.  At that time defendants contesting a citation are required to fill out a form called a Speeding Violation Transfer form that authorize[s] Intellisafe to transfer all evidence that has been recorded.  Thus, defendants who have often missed work for court are instead told that they will be notified of an actual court date, only to have to miss work again.

*Id.* at 13–14. Completion of the Speeding Violation Transfer form purportedly authorizes transfer of "all existing paperwork and evidence that has been recorded"

to municipal court.  Compl. Ex. C [1-3].

Plaintiffs and the putative class received speeding tickets by mail pursuant to this program.  A copy of Kilgore's Notice of Speed Violation and Uniform Traffic Ticket are attached as exhibits to the original Complaint.[1]  Both documents outline three options for resolving the traffic citation: (1) "[c]omplete a diversion program by paying a reduced fee of $230 and watching a short video online . . ."; (2) contest the citation by visiting a website or calling a telephone number; or (3) "[p]ay the citation in full . . . ."  Compl. Ex. A [1-1], Ex. B [1-2].  The Uniform Traffic Ticket also provides notice of a February 5, 2025, court date.  Compl. Ex. B [1-2].

Plaintiffs filed their [1] Complaint and [3] Amended Complaint pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, and 28 U.S.C. § 1332(d).  They attempt to assert claims pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as corresponding provisions of the Mississippi Constitution.  They also raise the Driver's Privacy Protection Act, fraud, abuse of process, unjust enrichment, breach of fiduciary duty, and conspiracy.  They seek declaratory and injunctive relief,[2] compensatory damages, damages for emotional distress, punitive damages, and attorney's fees.

The Moss Point Defendants and Intellisafe have filed [8], [18] Motions to Dismiss for lack of standing and for failure to state a claim upon which relief can be

---

[1] A copy of Howard's ticket was not attached to the Complaint, and no exhibits were attached to the Amended Complaint.

[2] Plaintiffs have not specified what declaratory or injunctive relief they seek.

granted.  In the alternative, Intellisafe requests a stay of Plaintiffs' requests for

injunctive and declaratory relief.

## DISCUSSION

### I.   OVERVIEW OF PERTINENT MISSISSIPPI TRAFFIC LAW

Mississippi's Uniform Traffic Ticket Law provides:

> Every traffic ticket shall show, among other necessary information, the name of the issuing officer, the name of the court in which the cause is to be heard, and the date and time the person is to appear to answer the charge.  *The ticket shall include information that will constitute a complaint charging the offense for which the ticket was issued, and when duly sworn to and filed with a court of competent jurisdiction, prosecution may proceed thereunder.*

Miss. Code Ann. § 63-9-21(3)(c) (emphasis added).  "The original traffic ticket . . .

shall be delivered by the officer issuing the traffic ticket to the clerk of the court to

which it is returnable to be retained in that court's records and the number noted on

the docket."  *Id.* § 63-9-21(6).

"[W]hen an officer writes a ticket and gives it to the defendant, he may later

choose not to file it with the court."  Traffic Citation, Miss. Att'y Gen. Op. No. 2003-

0520, 2004 WL 1379968, at *1 (Miss. A.G. Sep. 26, 2003).[3]  Furthermore,

> [t]he statutes of this state do not specify how soon an officer must file tickets in justice court[,] but they contemplate that the officer will turn in tickets before the appearance date set on the ticket.  When an officer has not turned in the ticket, there is no criminal charge against the defendant.

---

[3] "Mississippi law does not treat the Attorney General's opinions as binding.  But they are often persuasive authority."  *Teeuwissen v. Hinds County*, 78 F.4th 166, 172 (5th Cir. 2023) (citation modified).

Filing of Tickets by Officers, Miss. Att'y Gen. Op. No. 94-0497, 1994 WL 498740, at *1 (Miss. A.G. Aug. 31, 1994).

Traffic violations are misdemeanors, Miss. Code Ann. § 63-9-11(1)(1), and the statute of limitations is two years, § 99-1-5(2). *See* Old Cases, Miss. Att'y Gen. Op. No. 2002-0048, 2002 WL 321980, at *1 (Miss. A.G. Feb. 15, 2002) (addressing the statute of limitations for traffic violations). Mississippi's diversion program is codified at § 63-9-11(b)(i).

In 2009, the Mississippi Legislature enacted a statute prohibiting counties and cities from using an "automated recording equipment or system" to enforce traffic laws. Miss. Code Ann. § 17-25-19(1)(a). The statute further provides:

> "automated recording equipment or system" means a camera or optical device installed to work in conjunction with a traffic control signal or radar speed detection equipment or both and designed to record images that depict the license plate attached to the rear of a motor vehicle that is not operated in compliance with instructions of the traffic control signal or the posted speed limit.

§ 17-25-19(2). Here, the parties dispute whether Moss Point's use of the Intellisafe camera system violates this statute.

## II.    ARTICLE III STANDING

Article III of the Constitution restricts federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. "Under Article III, a case or controversy can exist only if a plaintiff has standing to sue[.]" *United States v. Texas*, 599 U.S. 670, 675 (2023). As a result, "a lack of standing is a lack of subject matter jurisdiction." *Lutostanski v. Brown*, 88 F.4th 582, 587 (5th Cir. 2023).

Standing to sue requires "(1) . . . an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "In light of these principles, [courts] have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power." *United States v. Hays*, 515 U.S. 737, 743 (1995). "The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation modified).

In a putative class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 924 n.12 (5th Cir. 2023). Furthermore, "standing is not dispensed in gross." *TransUnion LLC*, 594 U.S. 413, 431 (2021). Therefore, Plaintiffs "'must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'" *See Parr v. Cougle*, 127 F.4th 967, 972 (5th Cir. 2025) (quoting *Murthy v. Missouri*, 603 U.S. 43, 61 (2024)).

"Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element [of standing]." *Pearson v. Shriners Hosps. for Child., Inc.*, 133 F.4th 433, 446 (5th Cir. 2025) (quoting *Spokeo, Inc.*, 578 U.S. at 338). The court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Barilla v. City of Houston*, 13 F.4th 427, 431 (5th Cir. 2021) (citation modified). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–889 (1990)). Thus, the case can be dismissed for lack of standing only if "it appears certain that [the plaintiff] cannot prove a plausible set of facts that establish[es] subject matter jurisdiction." *Umphress v. Hall*, 133 F.4th 455, 462 (5th Cir. 2025).

Defendants argue that Plaintiffs do not have standing to pursue their claims. Plaintiffs counter that they suffered an "actual injury from payment of fines and[/]or attorneys, [a] collateral effect on driving records[,] and increased costs of insurance." Pls.' Mem. [15] at 3. They claim there is a causal connection because "all citations complained of were of the offending 'camera citation' type." *Id.* at 3–4. And they claim that an "award of damages and/or injunctive relief would be appropriate redress." *Id.* at 4. They further argue:

> Citations issued against the named Plaintiffs and others similarly situated are the fruit of an unlawful enterprise, ab initio. Furthermore, every citation issued and mailed by the Defendants has

the same invalid underlying basis, an affidavit improperly and unlawfully issued by an officer of the City of Moss Point that becomes the underlying basis for all actions and consequences as to each and every citation processed and mailed by the Defendants.

*Id.* at 5.

### A.    KILGORE

Kilgore claims she received a Notice of Speed Violation and Uniform Traffic Ticket in the mail.  Compl. Ex. A & B [1-2].  The Notice provides, "Your vehicle was photographed speeding by an on-scene Moss Point Police Department officer in violation of Moss Point ordinance 36-3."  Compl. Ex. A [1-1].

Kilgore asserts that she allowed family members to use her Ford Explorer on the date that the alleged speeding violation occurred.  "She retained a lawyer to fight the ticket."  Am. Compl. [3] at 3.  It is undisputed that Kilgore's citation was still pending, and she was waiting on a hearing when she filed this lawsuit.  Therefore, she had standing to file this lawsuit.  *See Blackledge v. City of Hattiesburg*, No. 2:24-CV-136-TBM-RPM, 2025 WL 3252404, at *5 (S.D. Miss. Oct. 31, 2025) (citing *Kilper v. City of Arnold,* No. 4:08CV0267-TCM, 2009 WL 2208404, at *10 (E.D. Mo. July 23, 2009) (finding standing where plaintiffs had "availed themselves of the process available, but the proceedings on [p]laintiffs' Notices [were] not yet resolved"); *see also Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 597 (E.D. La. 2008) (citation modified) ("Where, as here, a party faces a real and genuine threat of prosecution, he has standing to contest the legal basis of the threatened action.").

-8-

### B.    HOWARD

Howard claims that she received a traffic citation on Monday, November 18, 2024.  She asserts that "[s]he was not driving, but out of an abundance of caution paid the citation.  Fear of arrest, fear of an adverse effect on her driving record, and fear of her insurance rates going up, were sufficient motivation for an innocent person to pay rather than contest the citation."  Am. Compl. [3] at 2–3.

As an Alabama court held in a similar case,

> while payment of the fine could be considered an injury, [the plaintiff's] injury is not causally connected to the conduct of which she complains because she paid her fine without taking advantage of the process provided by the City to challenge it.  Even if that process were insufficient to satisfy constitutional standards, it did not cause [the plaintiff] to  voluntarily pay her fine; no traceable connection exists.

*Stubbs v. City of Center Point*, 988 F. Supp. 2d 1270, 1277 (N.D. Ala. 2013).  Furthermore, voluntary payment of a fine does not create standing to pursue a procedural due process claim even where a plaintiff claims "she was misled by the notice she received and intimidated into paying the fine."  *Mallory v. City of Hattiesburg*, No. 2:25-CV-10-KS-BWR, 2025 WL 4231046, at *10 (S.D. Miss. Oct. 14, 2025) (citing *Stubbs*, 988 F. Supp. 2d at 1274).  The Court must dismiss Howard's procedural due process claim for lack of standing.

Howard also lacks standing to pursue her other claims because voluntary payment of the fine is a self-inflicted injury.  *See Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018) (citation omitted) ("[S]tanding cannot be conferred by a self-inflicted injury.").  In addition, a plaintiff's "voluntary response to a possible risk of loss is not a cognizable injury because the potential loss was not 'certainly

impending.'" *Gas Transmission Nw., L.L.C. v. FERC*, 157 F.4th 674, 696 (5th Cir. 2025) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 402, (2013)); *see also Glass v. Paxton*, 900 F.3d 233, 242 (5th Cir. 2018) (holding insufficient even a "reasonable probability" of harm resulting from "objectively understandable and reasonable" reactions to the challenged actions of the defendant).  As a result, all of Howard's claims are dismissed for lack of standing.[4]

## III.   MOOTNESS

The parties informed the Court in supplemental briefing that Kilgore's citation was dismissed on April 15, 2025, which is the same day that Intellisafe filed its Motion to Dismiss.  The Moss Point Defendants have also produced the following testimony given by Moss Point Mayor Billy E. Knight, Sr.:

> On February 21, 2025, I issued a notice to the Moss Point Police Department to cease utilizing the Intellisafe, LLC camera software in detecting vehicle speed and photographic license plates for the issuance of speeding citations in the City of Moss Point.  That program has not been utilized since that date.

Affidavit [42-2].  Mayor Knight issued a memorandum to the Moss Point Chief of Police that stated, "[E]ffective today Friday, February 21, 2025, please discontinue the use of the [Intellisafe] (Radar Gun) to monitor speeding within our City of Moss

---

[4] Intellisafe argues that Howard's claims are moot because she voluntarily paid the fine.  Since Howard paid the fine before she filed this lawsuit, standing, not mootness, is the appropriate inquiry.  *See Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524–25 (5th Cir. 2008) (citation modified) ("Mootness is the doctrine of standing in a time frame.  The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).").

Point until further notice." Mayor's Mem. [42-3] (emphasis omitted). None of the parties have addressed whether Kilgore's claims were mooted by these two developments. "Because mootness implicates [the Court's] jurisdiction," the Court must consider it sua sponte. *See Jackson Mun. Airport Auth. v. Harkins*, 98 F.4th 144, 147 (5th Cir. 2024).

Like standing, the mootness doctrine stems from Article III's "Cases" and "Controversies" requirement. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012); *see also* U.S. Const., art. III, § 2. "Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). "[M]ootness results when a party receives complete relief in another judicial proceeding." *Gulfport Energy Corp. v. FERC*, 41 F.4th 667, 680 (5th Cir. 2022). A defendant's "voluntary cessation of challenged conduct moots a case, however, only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Perez v. City of San Antonio*, 163 F.4th 110, 119 (5th Cir. 2025) (citation modified) (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (per curiam)).

Here, Defendants voluntarily stopped using the Intellisafe camera program, but there is no indication that the Ordinance that implemented the City's use of the system has been repealed. Furthermore, Mayor Knight merely instructed the Police Chief to stop using the program "until further notice." Mayor's Mem. [42-3] (emphasis omitted). Thus, it is not "absolutely clear that the allegedly wrongful

behavior could not reasonably be expected to recur." *Perez*, 163 F.4th at 119. The mootness doctrine does not prevent the Court from exercising jurisdiction over Kilgore's claims.

## IV. *ROOKER-FELDMAN* DOCTRINE

The *Rooker-Feldman* doctrine derives its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The *Rooker-Feldman* doctrine generally precludes lower federal courts 'from exercising appellate jurisdiction over final state-court judgments.'" *Miller v. Dunn*, 35 F.4th 1007, 1010 (5th Cir. 2022) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)). "If a state trial court errs, the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court." *Id.* (citation modified) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). The *Rooker-Feldman* doctrine does not apply to Kilgore's claims because she is not contesting the state-court dismissal of her citation.[5]

## V. *HECK V. HUMPHREY*

"[A] prisoner may not seek damages in a § 1983 suit if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence."

---

[5] Howard's claims would not be subject to the *Rooker-Feldman* doctrine because she is "not subject at this time to any state-court judgment that could injure [her]." *Lennon v. City of Carmel*, 865 F.3d 503, 505–07 (7th Cir. 2017) (finding that the *Rooker-Feldman* doctrine did not apply to plaintiffs who "entered into deferral agreements under which they paid a fine and avoided prosecution or conviction").

*Gray v. White*, 18 F.4th 463, 467 (5th Cir. 2021) (citation modified) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).  The *Heck* rule is "concerned with all § 1983 claims by all civil plaintiffs who seek civil remedies against defective criminal processes."  *Wilson v. Midland County*, 116 F.4th 384, 388 (5th Cir. 2024).  And, it "applies whether a plaintiff is currently incarcerated or not."  *Collins v. Dall. Leadership Found.*, 77 F.4th 327, 330 (5th Cir. 2023).  Furthermore, *Heck* bars "civil claims that seek to invalidate convictions for or pleas to traffic offenses."  *City of Houston v. Busby*, 719 S.W. 3d 627, 633 (Tx. Ct. App. 2025); *see also Algoe v. State*, No. 3:15-CV-1162-D, 2016 WL 6902154, at *9 (N.D. Tex. Sept. 29, 2016), *report and recommendation adopted* 2016 WL 6893682 (N.D. Tex. Nov. 21, 2016) (finding that *Heck* barred civil rights claims challenging traffic citations and revocation of a driver's license where the plaintiff "failed to show that they have been reversed, expunged, invalidated or called into question").  "*Heck* implicates a plaintiff's ability to state a claim, not whether the court has jurisdiction over that claim."  *Colvin v. LeBlanc*, 2 F.4th 494, 499 (5th Cir. 2021).

Payment of a fine to resolve criminal charges is "at least a nolo contendere plea."  *Russell v. City of Lexington*, No. 3:23-CV-500-DPJ-ASH, 2025 WL 875808, at *6 (S.D. Miss. Mar. 20, 2025); *see also Owens v. Kelly*, 191 So. 3d 738, 744 (Miss. Ct. App. 2015) ("[P]ayment of a typical traffic fine . . . may be more akin to a plea of nolo contendere.").  A nolo contendere or no contest plea implicates the *Heck* rule. *Johnson v. Thibodaux City*, 887 F.3d 726, 732 (5th Cir. 2018).  The *Heck* bar also applies to a defendant's participation in a pretrial diversion program.  *Morris v.*

*Mekdessie*, 768 F. App'x 299, 301 (5th Cir. 2019).  Constitutional claims are often

barred by *Heck* because "[c]onviction based on an unconstitutional rule is the sort of

obvious defect that, when established, results in nullification of the conviction."

*Clarke v. Stalder*, 154 F.3d 186, 190 (5th Cir. 1998); *see also Connors v. Graves*, 538

F.3d 373, 376–78 (5th Cir. 2008) (holding that unlawful seizure and excessive force

claims were barred by *Heck*).

Howard entered a diversion program and paid her fine, so she entered a nolo

contendere plea.  That plea has not been invalidated.  A finding by this Court that

the traffic camera program and fine were unconstitutional would necessarily

invalidate this plea.  As a result, even if Howard had standing to pursue her

lawsuit, her Section 1983 claims would be barred by *Heck*.

## VI.    DEFENDANTS' RULE 12(b)(6) MOTIONS

### A.    PLEADING STANDARDS AND STANDARD OF REVIEW

"A pleading that states a claim for relief must contain . . . a short and plain

statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ.

P. 8(a)(2).  Furthermore, "[a] party must state its claims . . . in numbered

paragraphs, each limited as far as practicable to a single set of circumstances."  Fed.

R. Civ. P. 10(b).  "[P]leadings . . . violate Rule 10(b) if the theory and basis of counts

are not distinguishable or if it is difficult to discern the legal claims asserted."

*Desoto Grp., LLC v. Linetec Servs., LLC*, 339 F.R.D. 249, 251 (S.D. Miss. 2021).

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim

upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  Thus, "claims may be

dismissed under Rule 12(b)(6) 'on the basis of a dispositive issue of law.'" *Jackson v. U.S. Dep't of Hous. & Urb. Dev.*, 38 F.4th 463, 466 (5th Cir. 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)). "Dismissal under Rule 12(b)(6) also is warranted if the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (citation modified). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When deciding a Rule 12(b)(6) Motion, a court "accept[s] all well-pleaded facts as true and review[s] them in the light most favorable to the plaintiff." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 372 (5th Cir. 2010). Generally, courts can only consider the facts set forth in the complaint and its attachments. *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766–67 (5th Cir. 2016).[6]

Unfortunately, the Amended Complaint is a shotgun pleading that creates challenges for a court considering a Rule 12(b)(6) Motion.[7] Specifically, the

---

[6] While considering Defendants' Motions to Dismiss, the Court has limited its review to the Complaint and its attachments. The Court only considered the Affidavits filed with the Moss Point Defendants' Supplemental Brief while considering whether the mootness doctrine or the *Rooker-Feldman* doctrine prevent the Court from exercising jurisdiction over Kilgore's claims. As a result, it was not necessary for the Court to convert the Motions to Dismiss to Motions for Summary Judgment. *See* Fed. R. Civ. P. 12(b)(d).

[7] The Eleventh Circuit has identified four types of shotgun pleadings. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail[,] to one

Amended Complaint "fails to separate into a different count each cause of action or claim for relief in violation of Rule 10(b)." *See Goodnight Terminal Servs., Inc. v. ASG Chem. Holdings, LLC*, No. 1:24-CV-306-HSO-BWR, 2026 WL 360915, at *5 (S.D. Miss. Feb. 9, 2026) (citation modified) (explaining that "[c]omplaints that violate Rule 8(a)(2) or Rule 10(b), or both are sometimes referred to as 'shotgun pleadings'"). Nevertheless, the Court will attempt to identify all claims, as well as the facts forming the basis of each claim, and rule accordingly. Claims that survive will be subject to additional motions.

### B. SECTION 1983: PROCEDURAL DUE PROCESS

#### 1. Fifth Amendment

The Fifth Amendment applies only to "violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Here, Kilgore has not alleged that any defendant was acting under the authority of the federal government. As a result, she has failed to assert a plausible due process claim under the Fifth Amendment.

#### 2. Fourteenth Amendment

The Fourteenth Amendment provides, in part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property,

---

degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

without due process of law . . . ." U.S. Const. amend. XIV.[8] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified). Thus, the Fourteenth Amendment's Due Process Clause provides "a guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). But "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).[9] "[T]he deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon*, 494 U.S. 125. "The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Id.* at 126.

"[D]ue process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

---

[8] The Fourteenth Amendment's state-action requirement is identical to Section 1983's requirement under-color-of-law requirement. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982). Intellisafe has not denied that it was a state actor subject to liability under Section 1983 or the Fourteenth Amendment.

[9] Intellisafe cites *Wakinekona* in support of its claim that Kilgore lacks standing. However, the *Wakinekona* Court did not find that the plaintiff lacked standing; it held that he had not alleged the denial of a protected liberty interest. *Wakinekona*, 461 U.S. at 248–51.

*Jones v. Flowers*, 547 U.S. 220, 226 (2006) (citation modified). In other words, the

Supreme Court "has deemed notice constitutionally sufficient if it was reasonably

calculated to reach the intended recipient when sent." *Id.*

> Under most circumstances, notice sent by ordinary mail is sufficient to discharge the government's due process obligations. When the government sends notice by mail, however, the proper inquiry is not simply whether the government sent the notice, but whether it acted reasonably under all the circumstances in relying on the mail as a means to apprise the interested party of the pending action.

*Armendariz-Mata v. U.S. Dep't of Just.*, 82 F.3d 679, 683 (5th Cir. 1996); *see also*

*Tulsa Pro. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988) (noting that the

Supreme Court has "repeatedly recognized that mail service is an inexpensive and

efficient mechanism that is reasonably calculated to provide actual notice").[10]

Furthermore, actual notice "more than satisfie[s]" a person's due process rights.

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272, (2010); *see also*

*Matter of Sam*, 894 F.2d 778, 781 (5th Cir. 1990).

> Kilgore alleges that Defendants violated her right to due process
>
> by using the United State Postal Service as a means to effectuate notice and service of the citation. As a result of the lack of personal service, and instead using the mail to inform citizens of an alleged violation[ ], due process violations are bound to occur. Without proper notice alleged offenders who never received notice to come to Court are subject to fines and increased costs.

---

[10] In *Armendariz-Mata*, the Fifth Circuit held that service mailed to a claimant's house and to jail where he was incarcerated was not reasonable because the government knew that the claimant was incarcerated and because notice to the jail was returned undelivered. 82 F.3d at 683.

Am. Compl. [3] at 18.  However, service by mail is sufficient notice, and Kilgore

appears to concede that she received actual notice of her traffic citation.  Kilgore

also has not alleged that she was denied a hearing or that she paid a fine.  She

therefore has not alleged a procedural due process claim.

### C.    SECTION 1983: EQUAL PROTECTION

Kilgore alleges that Intellisafe and the Moss Point Defendants violated the

Equal Protection Clause of the Fourteenth Amendment "by allowing Intellisafe to

pick and choose who is ticketed and who is not; thus a non-governmental agency is

wielding State power under color of law." Am. Compl. [3] at 19.  In her Response

Memorandum, Kilgore further asserts, "The base allegation is that every person

cited under the scheme has suffered [a] due process violation as compared to those

members of the public that receive citations through appropriate and lawful

means." Resp. Mem. [23] at 14.

A governmental entity "does not violate the Equal Protection Clause merely

because the classifications made by its laws are imperfect.  Rather, as long as they

do not burden a fundamental right or target a suspect class, state agencies may

pursue legitimate purposes by any means having a conceivable rational relationship

to those purposes." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)

(citation modified).  Kilgore has not identified any fundamental right violated by

Defendants, nor has she alleged membership in any suspect class.  Thus, the

rational basis test applies.  "When [courts] apply rational basis at the failure-to-

state-a-claim stage, [they] must treat a legislative classification as valid if a court is

able to hypothesize a legitimate purpose to support the action." *Hines v. Quillivan,* 982 F.3d 266, 273 (5th Cir. 2020) (citation modified).

Several courts have found a rational basis for a city's use of traffic cameras. *See, e.g., Hughes v. City of Cedar Rapids*, 840 F.3d 987, 996 (8th Cir. 2016) ("The City could rationally conclude that the ATE system would reduce the number of people violating traffic laws."); *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009) (A "system that simultaneously raises money and improves compliance with traffic laws has much to recommend it and cannot be called unconstitutionally whimsical.").

In addition, the proposed classifications alleged by Kilgore in her Response Memorandum are problematic because one person could be a member of both classes. For example, the same person could be issued one speeding ticket during a traffic stop and a separate speeding ticket by mail within a short period of time. As another court has explained:

> The classification is problematic because the constituent members of the two groups constantly are in flux. . . . Plaintiff's classification may be discrete and identifiable at one moment in time, but the members of the class would change from moment to moment. Although the locations of allegedly differential enforcement are static, the drivers who are affected (or not) change on a daily basis. One could easily transition from protected class to discriminated class by driving a few blocks.

*Akbar v. Daley*, No. 09-CV-1289, 2009 WL 3055322, at *3 (N.D. Ill. Sep. 18, 2009); *see also Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, (2008) (citation modified) (quoting *S.A. Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 60 (1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state

legislation whose purpose or effect is to create discrete and objectively identifiable classes.")).

Kilgore has not pled a plausible Equal Protection Claim because the City of Moss Point has a rational basis for using the Intellisafe program. Specifically, the use of cameras helps deter drivers from speeding, and it provides a safer and more efficient means for issuing tickets to offenders.

### D.   SECTION 1983: FOURTH AMENDMENT

In support of her Fourth Amendment claim, Kilgore alleges, "[T]he Defendants cannot beyond a reasonable doubt tell who was actually operating the vehicle in question without stopping that vehicle and properly identifying the drivers." Am. Compl. [3] at 17. According to Kilgore,

> [t]he Officers are often guessing on who was actually driving. They apparently try to show the driver in a frontal shot of the vehicle, but such photos are insufficient for the Officer to truthfully swear an affidavit of a violation of traffic laws. Before a warrant can be issued the Fourth Amendment requires a truthful and factual showing in the affidavit used to establish probable cause.

*Id.* at 17–18. Kilgore further accuses Defendants of malicious prosecution in violation of the Fourth Amendment, claiming "Defendants intentionality [sic] initiate legal actions against the Plaintiffs although lacking probable cause to properly and exactly identify the drivers of vehicles." *Id.* at 18.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  Thus, "[t]he Fourth Amendment protects individuals from unreasonable searches and seizures.  Traffic stops are considered seizures within the meaning of the Fourth Amendment." *United States v. Banuelos-Romero*, 597 F.3d 763, 766 (5th Cir. 2010) (citation modified).  "[B]ecause a Fourth-Amendment malicious prosecution claim is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff." *Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) (quoting *Thompson v. Clark*, 596 U.S. 36, 43 n.2 (2022)).

Kilgore has not alleged that she was subjected to a traffic stop or any other form of seizure.  Nor has she alleged that she was subjected to a search.  As a result, Kilgore has not stated a claim for violation of the Fourth Amendment or Fourth-Amendment malicious prosecution.

### E.    SECTION 1983: SIXTH AMENDMENT

The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his [defense].

U.S. Const. amend. VI.  In her Amended Complaint, Kilgore does not provide any facts or allegations indicating which portion of the Sixth Amendment she claims Defendants have violated.  In her Response Memorandum, Kilgore argues that Defendants have violated her right to a speedy and public trial.

-22-

The right to a speedy trial "attaches when a person is arrested, indicted or otherwise charged." *United States v. Serna-Villarreal*, 352 F.3d 225, 230 (5th Cir. 2003) (citation modified).

> To determine whether a defendant's right to a speedy trial has been denied so as to justify the dismissal of the indictment, a court must evaluate and balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay.

*Id.* (citation modified). The first element—length of delay—is not only an element but also a "threshold." *United States v. Stuart*, 132 F.4th 892, 903 (5th Cir. 2025). The remaining elements are not considered unless the delay exceeds one year. *Id.*

Kilgore's ticket is not dated, but the speed violation allegedly occurred on December 18, 2024, and her hearing date was scheduled for February 5, 2025. She filed this lawsuit on February 26, 2025, and she filed an Amended Complaint on February 27, 2025. Since Kilgore filed her Complaint and Amended Complaint less than one year after the date of the speed violation, she did not assert a plausible speedy-trial claim.

### F.    SECTION 1983: CONSPIRACY

Plaintiffs allege that the City of Moss Point and Intellisafe

> conspired to circumvent [Miss. Code Ann. § 17-25-19] by facilitating police officers to use automated camera recording devices in order to take pictures of tags and issue speeding tickets based upon registered owners, whether or not they were driving the recorded vehicle. Upon information and belief Defendant Intellisafe, LLC is an active participant in running the scheme and collecting money.

Am. Compl. [3] at 16.  Plaintiffs further claim that Intellisafe "conspired with City leaders to pass an illegal ordinance (36-3) in order to create a revenue stream, the entire time, acting under color of law, and in defiance of existing Mississippi law." *Id.* at 17.

"A § 1983 civil conspiracy claim requires a plaintiff to allege facts "establish[ing] (1) the existence of a conspiracy involving state action" and "(2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Castille v. Port Arthur ISD*, 168 F.4th 240, 255 (5th Cir. 2026).  The Court has previously determined that Kilgore has not pled a claim for denial of her civil rights.  As a result, Kilgore has failed to state a § 1983 conspiracy claim.

### G.   FRAUD

Defendants argue that Kilgore failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Thus, plaintiffs must plead "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the 'who, what, when, where, and how' of the alleged fraud."  *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003) (citation modified).  "[G]eneral allegations, which do not state with particularity what representations *each* defendant made, do not meet this requirement."  *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) (emphasis added).  The

Mississippi Supreme Court compares a plaintiff's allegations with the following elements of fraud to determine whether a complaint satisfies Rule 9(b)'s requirements:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*State v. Bayer Corp.*, 32 So. 3d 496, 501 (Miss. 2010) (quoting *Allen v. Mac Tools, Inc.*, 671 So.2d 636, 642 (Miss. 1996)).

Kilgore claims that Intellisafe produced and mailed a Notice of Speed Violation "bearing the official seal and address of the Moss Point Police Department," and recipients of the Notice "would likely believe that it was from the Moss Point Police Department." Am. Compl. [3] at 15. On the other hand, Kilgore also alleges that Moss Point and Intellisafe conspired to issue the speeding tickets that accompany the Notice of Speed Violation. *Id.* at 16. She further claims that Intellisafe was acting "under color of law" when it issued the tickets. *Id.* at 17, 19. Thus, the premise of her lawsuit is that Intellisafe and Moss Point worked jointly to issue the speed citations. *See Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024) (citation modified) (finding that a private entity acts under color of law when the private entity is "a willing participant in joint activity with the state or its agents"); *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 357–58 (1974) (citation modified) (finding that a private entity acts under color of law when "the state had

so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise"). Kilgore's fraud and "state actor" theories of recovery cannot coexist. Therefore, the allegation that Intellisafe was issuing notices on behalf of Moss Point or in conjunction with Moss Point is insufficient to support a plausible fraud claim against either Intellisafe or the Moss Point Defendants.

As for the claim that officers issued tickets to people who were not driving, Kilgore has not alleged that the officers knew they were making false representations. Therefore, Kilgore therefore has not pled her fraud claim with particularity.

### H.    ABUSE OF PROCESS

Intellisafe seeks dismissal of Kilgore's abuse of process claim because:

> Defendants' traffic enforcement system is not used for an improper purpose. Instead, its aim is to mitigate dangerous speeding activity in a way that is safer for both motorists and law enforcement officers. The fact that a municipality has contracted with a private entity to assist in traffic enforcement is not improper and is ubiquitous across the nation. Lastly, no damage has resulted as Plaintiffs have not availed themselves of the court system.

Intellisafe Mem. [19] at 17.

The Mississippi Supreme Court has explained:

> The action of abuse of process consists in the misuse or misapplication of a legal process to accomplish some purpose not warranted or commanded by the writ. It is the malicious perversion of a regularly issued civil or criminal process, for a purpose and to obtain a result not lawfully warranted or properly attainable thereby, and for which perversion an action will lie to recover the pecuniary loss sustained.

*Williamson ex rel. Williamson v. Keith*, 786 So. 2d 390, 393–94 (Miss. 2001). "The elements of an abuse of process claim are as follows: '(1) the party made an illegal use of a legal process, (2) the party had an ulterior motive, and (3) damage resulted from the perverted use of process.'" *Sullivant v. Freeland*, 404 So. 3d 1281, 1284–85 (Miss. Ct. App. 2025) (quoting *Ayles ex rel. Allen v. Allen*, 907 So. 2d 300, 303 (¶10) (Miss. 2005)). Abuse of process is "concerned with the improper use of process *after* it has been issued." *State for Use & Benefit of Foster v. Turner*, 319 So. 2d 233, 236 (Miss. 1975) (emphasis added).

Here, the speeding ticket was the process issued. Kilgore has not alleged any improper use of the speeding ticket *after* it was issued. As a result, her abuse-of-process claim against Intellisafe must be dismissed. Kilgore's abuse of process claim against the Moss Point Defendants remains pending because those defendants did not address abuse of process in their Motion or Memorandum.

## I. MISSISSIPPI CONSTITUTION, BREACH OF FIDUCIARY DUTY, DRIVER'S PRIVACY PROTECTION ACT, AND UNJUST ENRICHMENT

None of the Defendants have presented argument concerning Kilgore's Mississippi Constitution, breach of fiduciary duty, Driver Privacy Protection Act, and unjust enrichment claims. As a result, those claims remain pending.

## J. DECLARATORY/INJUNCTIVE RELIEF

The Moss Point Defendants have not presented any argument concerning Kilgore's claims for declaratory and injunctive relief. Intellisafe asks the Court to stay Kilgore's claims for declaratory and injunctive relief, but it has not submitted

any argument or authority supporting such a stay.  As a result, Intellisafe's Motion for a Stay is denied.

### K.    PUNITIVE DAMAGES

Kilgore alleges that Defendants "acted in an arbitrary, capricious and reckless manner in choosing who to issue violations to based solely on recorded images of the vehicle and tag."  Am. Compl. [3] at 21.  She seeks punitive damages pursuant to Section 1983, and under Mississippi law.

Municipalities are entitled to immunity for punitive damages under Section 1983.  *Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 512 (5th Cir. 2022) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)).  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent[.]"  *Quiroz v. Hernandez*, 167 F.4th 254, 266 (5th Cir. 2025).[11]  Therefore, government employees sued in their official capacities are also immune from punitive damages under Section 1983.  *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 262 (2d Cir. 1997) (citing *Brandon v. Holt*, 469 U.S. 464, 471–73 (1985)).  Furthermore, the Mississippi Tort Claims Act (MTCA) provides that punitive damages cannot be assessed against a governmental entity or its employee.  Miss. Code Ann. § 11-46-15(2).

---

[11] Claims filed against government officials in their official capacities are typically dismissed as duplicative of the claims against the municipal defendant, but the Moss Point Defendants have not requested dismissal on that basis.  *See Quiroz v. Hernandez*, 167 F.4th 254, 266 (5th Cir. 2025).

Here, Kilgore has sued "the City of Moss Point, Mayor Billy Knight and the City Aldermen, each in their Official and Elected Capacity and the Moss Point Chief of Police in his Official Capacity." Am Compl. [3] at 1. There is no mention of any individual capacity claims in the Amended Complaint. As a result, all the Moss Point Defendants are immune from punitive damages.

However, corporate defendants, like Intellisafe, are not immune from punitive damages under Section 1983. *See Moore*, 41 F.4th at 513. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Under Mississippi law, "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a).

Since the Court has previously found that Kilgore has not alleged a plausible fraud claim, "actual fraud" cannot be the basis for Kilgore's punitive damages claim. *See id.* Kilgore also has not alleged facts supporting a finding of malice, gross negligence, "evil motive," or reckless or callous indifference. *See id.*; *Smith*, 461 U.S. at 56. As a result, she has not stated a plausible claim for punitive damages against Intellisafe.

## VII.   WHETHER THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Intellisafe argues, "Plaintiffs' state law claims should be dismissed with prejudice due to lack of supplemental jurisdiction."  Intellisafe Mem. [19] at 20 (emphasis omitted).  Thus, Intellisafe appears to be seeking dismissal pursuant to 28 U.S.C. § 1367(c), which provides, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  However, Defendants overlooked one of Kilgore's federal claims.  Specifically, Kilgore seeks damages pursuant to the Driver's Privacy Protection Act, 18 U.S.C. § 2721.  As a result, the Court finds that it would be inappropriate to decline to exercise supplemental jurisdiction at this time.

## VIII.  INTELLISAFE'S REQUEST FOR DENIAL OF CLASS CERTIFICATION

Intellisafe asks the Court to deny class certification in this case.  This request is premature.  *In re Outlaw Lab'y, LP Litig.*, No. 3:18-CV-1882-GPC-BGS, 2019 WL 2358692, at *7 (S.D. Cal. June 4, 2019) ("District courts have broad discretion to control the class certification process . . . and routinely deny preemptive motions to deny certification when plaintiffs have not been afforded adequate time for discovery."); *see also Whittington v. United States,* 380 F. Supp. 2d 806, 814 (S.D. Tex. 2005) (finding that a request for denial of class certification was inappropriate and premature).

## CONCLUSION

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Moss Point Defendants' [8] Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  All of Shirley Howard's claims against the Moss Point Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of standing.  The following claims filed by Jennifer Kilgore against the Moss Point Defendants are **DISMISSED WITHOUT PREJUDICE**: Fourth Amendment, Fifth Amendment, Sixth Amendment, Fourteenth Amendment Procedural Due Process, Fourteenth Amendment Equal Protection, conspiracy, fraud, and punitive damages claims.  The following claims that Kilgore filed against the Moss Point Defendants remain pending: Mississippi Constitution, abuse of process, breach of fiduciary duty, unjust enrichment, Driver Privacy Protection Act, declaratory judgment, and injunctive relief.

**IT IS FURTHER ORDERED AND ADJUDGED** that Intellisafe, LLC's [18] Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.  All of Shirley Howard's claims against Intellisafe are **DISMISSED WITHOUT PREJUDICE** for lack of standing.  The following claims filed by Jennifer Kilgore are **DISMISSED WITHOUT PREJUDICE**: Fourth Amendment, Fifth Amendment, Sixth Amendment, Fourteenth Amendment Procedural Due Process, Fourteenth Amendment Equal Protection, conspiracy, fraud, abuse of process, and punitive damages claims.  The following claims filed by Kilgore against Intellisafe remain pending: Mississippi Constitution, breach of fiduciary duty, unjust

-32-

enrichment, Driver's Privacy Protection Act, declaratory judgment, and injunctive relief.

**IT IS FURTHER ORDERED AND ADJUDGED** that Intellisafe, LLC's [20] Motion to Stay is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 30th day of March, 2026.

s/ *Louis Guirola, Jr.*

Louis Guirola, Jr.
United States District Judge